## KENNY et al. v. McKENZIE.

Code Civ. Proc. § 36, abolishing all distinctions between actions at law and suits in equity, and providing that there shall be but one form of action to be denominated a civil action, does not violate any constitutional right.

Code Civ. Proc. § 36, abolishing all distinctions between actions at law and suits in equity, and providing that there shall be but one

form of action to be denominated a civil action, does not in any degree abridge or change substantive private rights, whether recognized under the system of equity rules formerly administered in chancery courts or formerly cognizable in courts of law.

Nor does section 36, Code Civ. Proc., abridge in the least the enforcement of a right in any civil action where the particular form of remedy is deemed a part of the substantive right in equity.

Any facts constituting a defense under the rules of equity or at law may be pleaded in an action brought under Code Civ. Proc. § 675, authorizing an action by any person against another claiming an interest in real property adverse to him.

Statutes of limitation are applicable in bar of rights both legal and equitable.

Estoppel by laches is a purely equitable doctrine.

The statute of limitations and estoppel by laches are quite distinct, the statute being an arbitrary bar created by legislative enactment, while estoppel arises from the conduct of the parties themselves.

The doctrine of estoppel either by laches alone or by waiver applies in any case to determine the rights of the parties from the time when a mistake of law or of fact becomes known to the party whose rights are affected.

An action to recover the possession of land based on a naked legal title, the land having been sold under a mortgage foreclosure invalid because an assignment of the mortgage was not acknowledged so as to be entitled to record, is barred by estoppel, where plaintiffs were fully apprised of the foreclosure by one claiming to be an assignee of the mortgage, and that a deed had been executed to such assignee, and possession surrendered to such assignee, and paid no taxes for 12 years and knew that the land had been sold to defendant, and where plaintiffs did not show when they became advised of their rights, nor offer to redeem from the mortgages nor repay the taxes.

A party setting up that he ought not to be estopped by laches because of a mutual mistake of law as affecting his rights has, in equity, the burden of showing when he first became advised thereof.

Corson, J., dissenting.

(Opinion filed, May 24, 1910.)

On rehearing, Judgment and order of the trial court affirmed.

For former opinion, see 23 S. D. 111, 120 N. W. 781.

SMITH, J. This case is before us on rehearing. The opinion on the original hearing is reported in 23 S. D. 111, N. W. 781. Only two questions are presented at this time which seem to

merit a reconsideration: First, the decision of this court. in the case of Burleigh v. Hecht, 22 S. D. 301, 117 N. W. 367, and, second, the decision in the case of Shelby v. Bowden, 16 S. D. 531, 94 N. W. 416, as affecting the rights of the parties when applied to the case at bar. A restatement of the issues or facts is unnecessary, save in so far as they are involved in a consideration of these particular questions. In the case of Burleigh v. Hecht, supra, we took occasion to discuss to some extent the nature of the action involving rights in real property under the provisions of our Code. Upon a more careful review of that case we find ourselves somewhat in doubt as to the correctness of the conclusions there announced as to the form and nature of actions in this class of cases. That action, like the one at bar, was brought under the provisions of section 675, Code Civ. Proc., which provides as follows: "An action may be brought by any person against another who claims an estate or interest in real property adverse to him, for the purpose of determining such adverse claim." In that case as in this, the defendant sought to plead an equitable estoppel as a defense to the action. It was there contended that this defense was not available, and the same contention is made in this case. Counsel for respondent in his brief on rehearing says:

"(1) The doctrine of equity is applicable only to actions in equity as distinguished from actions at law, and the present action is an action at law being equivalent under our practice to the common law action of ejectment. Burleigh v. Hecht, 22 S. W. 301, 117 N. W. 367.

"(2) Even though it were an action in equity, the doctrine of laches would not apply for the reason that no statute of limitations has run and none has been pleaded in the action, and the statutes of limitation in our state are clearly binding upon actions at law and suits in equity."

In discussing this question in the Hecht case, this court said: "For the purpose, therefore, of determining whether or not the doctrine of laches is applicable to this case, it is necessary to determine whether or not the action is in the nature of a legal or

equitable action, for, if it is a legal action, the doctrine of laches does not apply, as that doctrine is only applicable to equitable actions. McFarlane v. Grover, 70 Ark. 371, 69 S. W. 56, 91 Am. St. Rep. 84; Wilson v. Nichols, 72 Conn. 173, 43 Atl. 1052; Bank v. Baker, 176 Mass. 294, 57 N. E. 603; Wood, Lim. p. 60, note 'a.' This action was instituted under the provisions of section 675 of the Code of Civil Procedure, which provides as follows: 'An action may be brought by any person against another who claims an estate or interest in real property adverse to him, for the purpose of determining such adverse claim.' This section was evidently designed as a substitute for the old action formerly known as ejectment and the equitable action to quiet title, and is broader and more comprehensive than either of those actions. The general purpose and effect of this statute is to extend the remedy to cases in which, under the rules of equity, no relief could be had either because the adverse claim was not such as to constitute a technical cloud upon the title, or because the plaintiff was not in a position to invoke the equitable jurisdiction. 17 Enc. Pl. & Pr. 290. It also extends the remedy under the old action of ejectment, as that action could only be maintained when the plaintiff was out of possession, and the defendant in possession; but under this provision of the Code the action may be instituted by a plaintiff either in or out of possession, and when the defendant is in or out of possession. But, notwithstanding this section embraces both the former action of ejectment and the action to quiet title, it cannot be said to be a legal or equitable action independently of the pleadings in the case. Whether or not the action is to be regarded as a legal or equitable action is to be determined by the pleadings. When the plaintiff claims to be the owner of the property, and is out of possession and the defendant in possession and the plaintiff seeks in the action to recover such possession as well as to determine the adverse claims of the defendant, the action is clearly a legal action, and the parties in such case are entitled to a jury trial under the provisions of section 244, which provides: 'An issue of fact for the recovery of money only, or of specific real or personal property, must be tried by a jury, unless a jury

trial be waived as provided in section 275.  *  *  *' In the case at bar it will be observed that the plaintiff claims title in fee to certain specific real property described in the complaint, and that she is entitled to the possession of the same, that for six years prior to the commencement of this action said defendants have withheld the possession of said property from her, and that she demands judgment that she be adjudged to be entitled to the possession of the said property, and demands a specific sum for the use and occupation of the same. It is quite clear, therefore, that this is an action to recover the possession of 'specific real property' as well as to determine the adverse claims of the defendants, and is therefore an action at law. The section of our Code above quoted is copied from the Code of California, and the learned Supreme Court of that state has held, in numerous cases, that, when the action is to recover possession of real property, it must be regarded in effect as an action at law in which the parties are entitled to a jury trial.' In Gillespie v. Gouly, 120 Cal. 515, 52 Pac. 816, that court says: 'This action may be said to be one of those statutory actions authorized by section 738 of the Revised Code of Civil Procedure. It is an action brought to quiet title by a party out of possession against one claiming title and in possession. In such an action either party is entitled to a jury as a matter of right.' Donahue v. Meister, 88 Cal. 121, 25 Pac. 1096, 22 Am. St. Rep. 283; Newman v. Duane, 89 Cal. 597, 27 Pac. 66; Hughes v. Dunlap, 91 Cal. 385, 27 Pac. 642; Taylor v. Ford, 92 Cal. 419, 28 Pac. 441; Landregan v. Peppin, 94 Cal. 465, 29 Pac. 771. In the later case of Haggin v. Kelly, 136 Cal. 481, 69 Pac. 140, that court held: 'If the action were viewed as an action to quiet title, or to determine an adverse claim, under section 738 of the Code of Civil Procedure, the plaintiff being out of possession, and asserting title, and seeking recovery of possession, the plaintiffs would be entitled to a jury trial.' In Newman v. Duane, 89 Cal. 597, 27 Pac. 66, that court in its opinion took a similar view, and held the parties were entitled to a jury trial, and reversed the judgment of the trial court denying a jury trial. While the case at bar was tried by the court without a

jury, probably by stipulation of the parties, as no question is made as to the action of the court in trying the cases without a jury, still the cases above cited are in point as showing that, when the action is to recover possession of real property, it is in the nature of an action at law, and not in equity, and it necessarily must be so, for the reason that an action in equity could not have been maintained under the old equity system to quiet title, as the plaintiff in such an action was required to allege and show that he had no remedy at law, and, where the plaintiff was out of possession, he clearly would have had a remedy at law under the old action of ejectment."

If the question under discussion in the Hecht case had been raised by an exception to a denial of the right to a jury trial, the authorities there cited would have been directly in point. But there was no such question in that case. Under section 6 of article 6 of the State Constitution, it is provided that: "The right of trial by jury shall remain inviolate and shall extend to all cases at law without regard to the amount in controversy, but the Legislature may provide for a jury of less than twelve in any court not a court of record, and for the decision of civil cases by three fourths of the jury in any court." Such a constitutional provision has never been held to restrict the power of a Legislature to declare, as has been done in many states, that all issues, arising in civil actions out of the assertion of rights or wrongs, either legal or equitable, shall be tried and determined in a single form of action. Nor does a statute violate any constitutional right when it declares, as does our own, that: "The distinction between actions at law and suits in equity, and the forms of all such actions and suits heretofore existing are abolished. And there shall be in this state, hereafter, but one form of action for the enforcement or protection of private rights and the redress of private wrongs, which shall be denominated a civil action." Code Civ. Proc. § 36. Nor does such a statute in any degree abridge or change any existing substantive private rights, whether they are rights recognized under that system of equity rules which were formerly administered in courts of chancery, or those rights or injuries which

were formerly cognizable in courts of law. The whole body of substantive rights remains unchanged, and only the method of enforcing them is changed so that all such rights must be presented and determined in a single action known as "a civil action." Nor does such a statute abridge in the least the enforcement of rights in any civil action where the particular form of remedy was deemed a part of the substantive right in equity. All such rights may be administered and enforced under the new system in one action, and by the same court. The only inhibition or limitation upon the power of the Legislature to enact laws creating a new method of enforcing rights and redressing wrongs is that the right of trial by jury shall remain inviolate in "all cases at law." There is practically no controversy in the decisions of courts or among law writers as to the class of cases falling within the language of this constitutional provision. It embraces in general every class of rights and wrongs which could be litigated in actions at law. Some questions have arisen perhaps as to that class of cases in which concurrent jurisdiction existed at law and in equity. But a discussion of those cases is unnecessary for the purposes of the question before us.

It follows, therefore, that the same rights in property which could have been enforced at law (e. g., in an action of ejectment) may be enforced in our "civil action"; and, unless waived, a jury trial may be demanded when such rights are in issue. But beyond this single limitation the power of the legislative assembly is plenary. It may declare, as ours has done, that in any "civil action" the defendant may by his answer "set forth as many defenses and counterclaims as he may have whether they be such as have been heretofore denominated legal or equitable, or both." In consonance with the new system of enforcing rights and redressing wrongs the Code provides: "All forms of pleading heretofore existing are abolished; and hereafter, the forms of pleading in civil actions in courts of record, and the rules by which the sufficiency of the pleadings is to be determined, are those prescribed by this Code." Section 117, Code Civ. Proc. The old forms of pleading and of issues are thus abolished along with the old actions, and

an entirely new system of presenting issues for trial is substituted for the old. Under the new system, the right to a jury trial in any particular case is determined by the specific issue presented, and not by the form of the action. The mode of trial of issues of every kind which may arise in a civil action is prescribed by the New Code of Procedure. "An issue of law must be tried by the court or by the judge. An issue of fact for the recovery of money only, or of specific real or personal property, must be tried by a jury unless a jury trial be waived as provided in section 275. Every other issue is triable by the court which, however, may order the whole issue or any specific question of fact involved therein, to be tried by a jury, or may refer it as provided in sections 281 and 282." Section 244, Code Civ. Proc.

The perfect adaptation of the new system to the end in view in conformity to the constitutional provision preserving the right to a jury trial in all "cases at law" is made clear by the language of the section above quoted. An "issue" arising in a "civil action" "for the recovery of money only, or of specific real or personal property," covers and includes every right which might have been asserted in any "case at law" under the common-law system. Common-law actions or "cases at law" in their broadest classification embraced actions for the recovery of specific real property, or of specific personal property, or of money in contract or tort actions, where the right asserted was founded upon the strict rules of law, as distinguished from the assertion of equitable rights recognized only in chancery courts. But the new system, which allows the assertion of a right founded upon the rules of equity as a defense against the assertion of a strict legal right, has apparently given rise to some confusion in some cases with regard to the right to a jury trial. It would seem that such confusion is unnecessary when the question may be determined by a consideration of the specific issue presented in any case. Where the facts alleged and upon which the legal right is based are denied, or facts alleged in the answer which would constitute a defense at law, it is clear that the issue thus raised would entitle the party to a jury trial. But when the facts alleged and upon which the

legal right is founded are admitted by the answer, and other facts are alleged in the answer by way of counterclaim which would constitute an equitable defense in chancery against the assertion of the legal right, then no issue arises in a "case at law," because the "case at law" stands admitted, and there is no issue at law. It must be constantly borne in mind that it is the trial by a jury of an issue in a case which was formerly cognizable at law which is guaranteed by the Constitution, and not a trial in any particular court, or any particular form of action. It is perfectly clear, therefore, that where a legal right is asserted in a civil action, which is founded upon allegations of fact which would have sustained an action of ejectment at common law, and the answer does not deny or admits such alleged facts, but pleads in defense facts which constitute an equitable defense, the issue raised by a denial of such equitable defense does not constitute a "case at law," or give the right to jury trial. In the Hecht case, supra, we held that, inasmuch as the plaintiff sought to recover possession of the land on the strength of his legal title, the action was in the nature of ejectment. The inaccuracy in that case was in substituting the word "action" for "issue." The action was simply the "civil action" of the Code—not the ejectment action of the common law, nor governed by the common-law rules of pleading or practice. It is true, as stated in that case, that the answer put in issue the rights of the plaintiff, but only as a matter of law under the attempted defense of equitable estoppel. It did not put in issue the facts alleged in the complaint, as to the legal title of the plaintiff and his consequent right of possession, and they were not controverted, except by way of allegations of facts which were claimed to be sufficient in equity to estop the plaintiff from asserting his legal title and right of possession. The facts in plaintiff's "case at law" were admitted; hence there was no issue on which plaintiff had the right to demand a jury trial. We also held in that case that, as the action was a "legal action," the defense by way of equitable estoppel was not applicable, being available only in "equity actions." In both conclusions we now believe we were in error. By the great weight of authority and decision under Code systems

similar to our own any facts constituting a defense under the rules of equity or at law may be pleaded in a civil action brought under the provisions of section 675, Code Civ. Proc. and only those issues which arise upon controverted facts which are the foundation of a legal right or title require a jury trial when not waived.

This view has been heretofore acted upon by this court in a number of cases, as well as by the late territorial Supreme Court. Wampol v. Kountz, 14 S. D. 334, 85 N. W. 595, 86 Am. St. Rep. 765; Shelby v. Bowden, 16 S. D. 531, 94 N. W. 416. In the case of Murphy v. Dafoe, 18 S. D. 51, 99 N. W. 86, Justice Corson quotes with approval the language in Barnard v. Ger. Am. Sem., 49 Mich. 444, 13 N. W. 811: "'Estoppels in pais' are called 'equitable estoppels' because they arise upon facts which render their application in the protection of rights, equitable and just, and they are just as readily and truly recognized in courts of law as in courts of equity." Suessenbach v. First Nat. Bank, 5 Dak. 477, 41 N. W. 662; Goldberg v. Kidd, 5 S. D. 169, 58 N. W. 574. Many cases holding this general doctrine from states having statutes similar to our own are collated in note 4, p. 533, 10 Am. & Eng. Enc. of Law. In Goldberg v. Kidd, supra, this court also quotes with approval the language of Judge Denio in Chase v. Peck, 21 N. Y. 581: "'But since the blending of legal and equitable remedies a different rule must be applied. The defendant can defeat the action upon equitable principles; and if, upon the application of these principles, the plaintiff ought not to be put into possession of the premises, he cannot recover in the action.' This question of equitable defenses in actions at law is discussed in Pomeroy's Remedies and Remedial Rights (section 94 et seq.) and the learned author states the rule to be that: 'Where the nature of the subject-matter and the relations between himself and the plaintiff are such that he could have maintained an independent suit in equity against the plaintiff, and procured specific relief thereby, or could have filed a cross-bill, under the old practice, he may now obtain the same remedy upon his answer; at all events, as was before remarked, if the demand alleged in the answer constitute a valid counterclaim.'" In Suessenbach v. First Nat. Bank,

supra, the late territorial Supreme Court, speaking through Jus-
tice Carland, said: "The course pursued by the court in relation
to discharging the jury was not error. Under the system of plead-
ing prevailing in this territory, equitable defenses to an action of
ejectment may be set up by way of counterclaim, and, when so set
up, they assume the character of a suit in equity, and it is the
proper practice for the court to determine the equitable issues
first, and, having determined them in favor of respondent, there
was nothing for the jury to do. As supporting this mode of pro-
ceeding, see Du Pont v. Davis, 35 Wis. 631-639; Ingles v. Pat-
terson, 36 Wis. 373-376; Bartlett v. Judd, 21 N. Y. 200-203, 78
Am. Dec. 131; Pom, Rem. pp. 97, 737, 746, 764, 792; Lombard v.
Cowham, 34 Wis. 490, 492; Code Civ. Proc. § 119, subd. 2; Tabor v.
Mackkee, 58 Ind. 290; Cavalli v. Allen, 57 N. Y. 508, 514;
Arguello v. Edinger, 10 Cal. 150; Estrada v. Murphy, 19 Cal.
248, 272."

Attention also may be called to the case of Craigo v. Craigo,
22 S. D. 417, 118 S. W. 712, and to Leisch v. Baer, 24 S. D. 1,
123 N. W. 719. Respondent also contends that the doctrine of
equitable estoppel by laches cannot apply in this case "because no
statute of limitations has run and none has been pleaded, and the
statute of limitations are clearly binding upon actions at law and
suits in equity." We are not entirely clear as to what is meant
by this statement. We agree with counsel that statutes of limita-
tion prescribed by legislative enactment are applicable according to
their appropriate period in bar of rights both legal and equitable.
We agree, also, that estoppel by laches is a purely equitable doc-
trine. But the statute of limitations and the doctrine of equitable
estoppel are quite distinct. The statute is an arbitrary bar created by
legislative enactment, while equitable estoppel arises not from any
statute, but from the acts and conduct of the parties themselves.
An estoppel may arise from laches covering a period of time much
shorter than that prescribed by statute. When the full period of
statutory limitation has expired, no occasion exists to invoke the
doctrine of laches, though it might still be available in any case
where the statute of limitations has run. No question as to the

statute of limitation is presented on this appeal. In our former opinion it was considered that the present case might be distinuguished and a different rule applied because of certain facts existing in this case which did not appear in the case of Shelby v. Bowlen, 16 S. D. 531, 94 N. W. 416. In the case at bar it is stated in our former opinion that appellants were ignorant of the true state of their title, and for that reason should not be estopped from asserting it by reason of laches. A careful re-examination and comparison leads us to doubt whether the two cases may be so distinguished. Both were cases of real estate mortgages, and in each case the mortgage contained a power of sale under which foreclosure proceedings were had, and the mortgaged premises sold and deeded to the mortgagee as purchaser at the sale. In both cases the foreclosure proceedings themselves were in all respects regular on their face. In each case the purchaser, relying upon his title under the foreclosure, had paid off a prior incumbrance upon the land. In both cases the mortgagors had surrendered possession to the defendants or their grantors who had been in undisputed possession for about seven years, had made improvements of substantial value, had paid all taxes against the land for some years, and the value of the land had greatly increased. In both cases the defect which was deemed to render the foreclosure proceedings invalid was a failrue to legally record that which the statute required to be of record as a condition to the exercise of the power of sale. In the Bowden Case the defect was a failure to record the power of sale contained in the mortgage. In the case at bar the defect was the attempted record of an assignment of the mortgage which was not entitled to record because acknowledged by a director of the foreign corporation, instead of by the president or secretary as required by the statute. The effect of our former opinion is to make a distinction between these two defects. In distinguishing this case we said: "In the Bowden Case the court found that 'the mortgagor who executed the mortgage with power of sale therein was bound to know the contents of the instrument he had executed; and hence, knowing that there was a power of sale in

the mortgage, and that the mortgage could be properly foreclosed by advertisement and was in fact so foreclosed, he had full knowledge of his rights in the premises. In the case at bar, however, it is not found by the court that these plaintiffs or either of them had any knowledge of the defect in the assignment of the mortgage by the Minnesota Company to the Canadian Company as they were not parties to that assignment, and therefore during the time that they acquiesced apparently in the possession and claim of the Canadian Company in the possession of the premises they had no knowledge of their rights, and that the title of the property still remained in them, notwithstanding the attempted foreclosure of the mortgage by advertisement." But we now observe that in both cases the mortgagors knew that the mortgage contained a power of sale, and that the mortgage might be foreclosed. We might also properly add that the plaintiffs in this case knew that the mortgage might be assigned as well as foreclosed, and they did know as a matter of fact that it was being foreclosed by one who claimed to be an assignee. And, after foreclosure, they delivered possession to this same assignee who had foreclosed, and had himself purchased the land. Both here and in the Bowden Case the mortgagor believed he had lost his title by foreclosure, and in each case the defendants as purchasers believed they were acquiring a valid title through the foreclosure proceedings. In both cases all parties to the transaction were equally cognizant of all the facts, and equally advised as to the law. Hence it appears to us that, if we were right in the rule adopted in our former opinion in the case at bar, we were wrong in the Bowden Case. It becomes necessary, therefore, to examine the doctrine of estoppel by laches, as affected by ignorance of title because of ignorance of the law. The doctrine seems to be well settled, as announced by numerous decisions and textwriters, that he who acts in ignorance of his title shall not be estopped.

In many of the cases in which this rule is applied some conduct or acts on the part of the vendor in concealing a defect in the title known to him, or concealing his own title from the pur-

chaser, or some artifice or concealment on the part of the pur-
chaser by reason of which the vendor is left in ignorance of his
real title, which acts or conduct are in their effect. fraudulent,
appear as the reason for the rule announced. In other cases actual
ignorance, without fault or artifice, of some fact on which the
title depends, is given as the reason of the rule. In the latter class
is the case of Biddle Boggs v. Merced M. Co., 14 Cal. 279, 367.
In that case the plaintiff had made certain statements with refer-
ence to boundaries of mining ground sought to be recovered,
which statements were pleaded and relied upon as an estoppel.
The court says: "But that it was not shown that he willfully
made them or intended to deceive or defraud the defendant or to
influence its conduct, but that they were made without any fraudu-
lent intent and before the final location of his claim and when it
was unknown where the lines thereof would be fixed, and that he
knew of the occupation and improvements of the defendant from
the time possession was taken without forbidding the same, or
claiming the premises, until July, 1855." It is clear that the ig-
norance of "the true state of his own title" there involved was
the plaintiff's want of knowledge of a fact on which his title de-
pended, viz., the true location of his own boundary line, and that
his ignorance was not the result of a want of diligence on his own
part to ascertain the true facts, nor of any act or artifice on the
part of defendant. Ignorance of his title was not the result of
ignorance of the law governing his rights. Nor does it appear
in that case that the plaintiff had been guilty of any laches, or of
sleeping upon his rights, after he had been apprised of the true
location of his boundary line by an authoritative survey. Nu-
merous cases are there cited to sustain the rule laid down, but an
examination shows that every one of them involved ignorance
of facts upon which title depended, and not ignorance of the legal
effect on the title of known facts. For this reason, this line of
decisions is not decisive of the precise question here involved.
There is no pretense that in either of the cases in this court which
we are discussing there was ignorance of any fact. In our ex-
amination of the decisions as to the effect of ignorance of the

law when all the facts are known to both parties, we have found it held many times that ignorance or mistake of law may be made the ground of equitable relief, and in some cases may prevent an estoppel.

The cases of Gjerstadengen v. Hartsell, 9 N. D. 268, 83 N. W. 230, 81 Am. St. Rep. 575, and Estis v. Jackson, 111 N. C. 145, 16 S. E. 7, 32 Am. St. Rep. 784, illustrate the latter proposition But in these cases and many others the question seems to have been treated under the principles of law which govern the rights of parties acting under a mutual mistake of fact. The underlying principle seems to be that the consent of parties to a contract or any transaction must be free, mutual, and communicated by each to the other, and that an apparent consent is not real or free when obtained through duress, menace, fraud, undue influence, or mistake. Sections 1194, 1195, 1196, Civ. Code. "A mistake may be either of fact or of law." Section 1205, Civ. Code. "Mistakes of law constitute a mistake within the meaning of this article only when it arises from: (1) A misapprehension of the law by all parties, all supposing that they knew and understood it, and all making substantially the same mistake as to the law; or (2) a misapprehension of the law by one party of which the others are aware, at the time of contracting, but which they do not rectify." It will be observed that the reasoning and effect of substantially all the decisions is crystallized in these provisions of our Civil Code. The case before us falls easily within the doctrine of mutual mistake of law as to the effect of the foreclosure proceedings in divesting plaintiff's title to the land, and vesting the title in the purchaser at the foreclosure sale.

The question which remains is whether the doctrine of estoppel either by laches or quasi estoppel by implied waiver can properly have application in cases of mutual mistake of law. It is perfectly clear that the doctrine of estoppel either by laches alone or by waiver may apply in any case to control and determine the rights of parties from the time when a mistake of law or of fact becomes known to the party whose rights are affected. Because a right which is known to exist may be waived expressly or by

conduct; and a party who knows his rights and fails to assert them when he should, to the injury of another who has relied upon his silence or conduct, may be estopped by his own laches. The record in this case does not show when the plaintiffs became apprised of the legal fact that the assignment of the mortgage by the foreign corporation was invalid in law because acknowledged by a director, instead of by the president or secretary of the corparation. The record before us does show that the plaintiffs were fully apprised at all times of the foreclosure proceedings by one claiming to be assignee of the two mortgages they had given on their land; that a deed had been executed to this same assignee; that the plaintiffs voluntarily surrendered possession of the land to such purchaser, who went into actual possession; that the plaintiffs had paid no taxes on the land for 12 years; that the purchaser at the sale or his vendee had sold and transferred the land to the defendant and put him in possession thereof; that all taxes for 12 years had been paid by defendant and his grantors, who at all times claimed title to the land. Under these conditions, the plaintiffs bring this action to recover possession of this land on the assertion of the naked legal title in themselves. Their legal title being admitted, and facts pleaded by way of counterclaim, which in equity would constitute a clear equitable estoppel upon the assertion of the legal title, these plaintiffs are now relying upon the proposition that they ought not to be estopped because of a mutual mistake of law as to the effect of the foreclosure proceedings. The whole case falls clearly within and should be governed by the same rules of equity which would apply had the defendant brought a civil action seeking to quiet plaintiff's legal title, and to be adjudged the owner in equity of the premises in controversy, and demanding that plaintiffs be estopped by laches from asserting any right or title thereto. As disclosed by the record in this case, plaintiff's defense to such an action would be that they should not be estopped by laches because of a mutual mistake of law, and that their apparent acquiescence in the claims of defendant was without knowledge of their legal rights, and should not be allowed to work an estoppel. In such an action the

particular time at which they became first advised of their legal rights to claim the land would be a vital element of the defense, and the burden of proving it would rest upon them.

It will be observed that the vital question would be not when the mistake was made, but when it was first discovered. Suppose the plaintiffs had been fully advised of their legal rights, and in fact knew of the invalidity of the mortgage sale, immediately upon the execution of the sheriff's deed, could they then be heard to say to purchasers who were laboring under the same mistake, believing that the foreclosure was valid, and had never become cognizant of the legal invalidity of such sale, that such purchasers were bound to know the law, and that the plaintiffs who were cognizant of their existing legal title, and the purchasers who still laboring under the same mistake of law were not cognizant of such title in plaintiffs, should stand upon an equal footing in a court of equity? To allow such a contention would be to sanction constructive, if not actual, fraud. The defendant in this action under the allegations of his counterclaim by way of equitable defense has proved every fact essential to a full estoppel in equity against the assertion of plaintiff's bare legal title. The burden of defeating this estoppel should rest upon the plaintiffs, and, to sustain it, they must show the invalidity of the assignment of the mortgage, and their own mistake in supposing the foreclosure to be valid, the time when they first discovered the mistake, and that they have acted with reasonable diligence in asserting their legal rights when advised thereof. Both plaintiffs and defendant would thus bring themselves within the domain governed by rules of equity. But the plaintiffs have seen fit to enter that domain through one of the gates opened to them by the rule of strict technical legal right. Shall they now be deemed to hold different or a more favorable position than if they had entered originally through the gate left open to them by the rules of equity by bringing an action to redeem? Are these plaintiffs in a position to demand the strict enforcement of merely legal rights, and at the same time refuse to be bound by the rules of equity? Can they claim that the burden of proof, which would

have rested upon them had they come into court and stated the entire case, and demanded such relief as they might be entitled to under the rules of both law and equity, should be made less onerous merely because they have not conformed to the spirit and even the language of our Code which requires that plaintiffs, when they come into court, shall state the facts which entitle them to relief? There can be no claim that the plaintiffs did not know all the facts, or that they were ignorant of the rules of equity. And no rules of equity is better settled than that a purchaser at a void judicial sale or a sale void for irregularity under a power may be subrogated to the rights of the mortgagee, and that those who acquire the right of the mortgagee by a deed likewise acquire the right of subrogation.

And shall these plaintiffs be permitted by a court of equity to oust the defendant from a possession of seven years without offering to redeem from the mortgages which they gave upon this land, or to pay the taxes which the defendant and his grantors have paid for twelve years, and without being required to show when they first became advised of their legal rights? Can they place the burden upon the defendant of showing that plaintiffs did know of their legal rights when both are presumed to have an equal knowledge of the law? In equity that burden should be held to rest upon these plaintiffs. The plaintiffs have replied to the defendant's counterclaim, but they have not pleaded a mutual mistake of the parties, nor have they disclosed when they became advised of their rights, nor have they offered to redeem from the two mortgages which they gave and which they do not claim to have paid, nor to repay the taxes which defendant and his grantors have paid for 12 years. These plaintiffs have not shown themselves willing to do equity, and have not alleged or shown when they became advised of their right to reclaim their legal title and possession, and, under such situation, they should be held estopped from maintaining this action. Upon the whole record before us, the judgment and order of the trial court are affirmed.

McCOY, J., not sitting. CORSON, J., dissenting.