PRUDEN *et al. v.* MIDDLETON.

No. 11017.   APRIL 17, 1936.
ADHERED TO ON REHEARING, JULY 17, 1936.

*Nathan Harris* and *Barry Wright,* for plaintiffs in error.
*W. B. Mebane* and *Maddox & Griffin,* contra.

BECK, Presiding Justice.   On February 8, 1935, M. M. Middleton brought his petition against Mrs. Varina B. Pruden and her two daughters, alleging as follows: The defendants, on September 20, 1919, executed and delivered to him their bond for title to a described parcel of land, binding themselves, on certain con-

siderations and the payment of stated sums, to make to him "a good and sufficient title" to that land. Before the execution of this bond for title he had been a tenant on the land for a number of years; and on several occasions the question had been discussed between him and Mrs. Pruden and her husband (who was then in life), relative to the purchase of this land by the plaintiff. He was told by Mrs. Pruden and her husband that title to the property could not be made until the youngest daughter of Mrs. Pruden arrived at the age of 21 years. On or about September 20, 1919, the plaintiff was informed by Mrs. Pruden that the youngest daughter had arrived at that age; and then the purchase was made and the bond for title executed. The plaintiff immediately went into possession, placed valuable improvements on the land, cleared about forty acres, and each and every year made payments of interest and principal, and for many years paid taxes on the land (which payments are enumerated in the petition), aggregating many thousands of dollars. In addition to these payments he executed and delivered to the defendants a deed to lands owned by plaintiff, to better secure the payment of his notes given for this purchase. Having remained continuously in possession of the premises in question until about September, 1934, he made application to a bank for a loan of money with which to pay off the balance of the purchase-price, and was informed by the bank and its attorneys (now the attorneys of the defendants) that the defendants could not make to him a good and merchantable title. The interest which they have in the land in controversy is derived from a deed which was executed and delivered by John Berry, dated September 19, 1876, recorded in 1877, and containing the following recital: "Said John Berry hath bargained and sold, granted and conveyed, and by these presents doth bargain, sell, grant and convey unto the said party of the second part [Varina Berry] for the use, benefit, and advantage in trust for the said Varina Berry for life, exempt from the marital rights of any future husband she may have, and for her sole and separate use, and on her decease to such child or children or representative of such child or children as she may leave in life; and if she shall have no child or children, then this property to go to Varina Berry's relatives on her father's side of the family." Varina Berry referred to in that deed is now the defendant Mrs. Varina

Berry Pruden, and the other two named defendants are her daughters, who joined with her in the execution of the bond for title given to the plaintiff, and one of these daughters has one child now about two years of age. Because of the above-quoted provisions in the deed of John M. Berry, the defendants can not make to him a good and merchantable title, as they contracted to do in the bond for title given to him in 1919, for the reason that they have only a contingent interest in the property. The plaintiff asks that the contract be rescinded. He tenders into court his bond for title; offers to vacate the premises and to account to the defendants for a reasonable rental of the land for the entire time since the execution of the bond for title to the date of the filing of his petition; and prays for an accounting, and that he recover from the defendants all sums expended by him for taxes, insurance, buildings, and all payments of purchase-money and interest made by him, less a reasonable sum for the use and occupancy of the land during the time he was in possession under the contract of purchase. He alleges that the representations of defendants and their acceptance of all these payments, and permitting him to make the improvements, etc., amounted to a legal fraud on him.

The defendants filed their general demurrer, one ground of which was that because of laches the plaintiff was not entitled in equity to a rescission of the contract. This demurrer was overruled, and the defendants excepted.

We are of the opinion that the court should have sustained the general demurrer on the ground that the plaintiff was guilty of such laches as that he is not entitled in a court of equity to a rescission of the contract. We find in our Code these provisions which are applicable in this case: "Equity gives no relief to one whose long delay renders the ascertainment of the truth difficult, though no legal limitation bars the right." § 37-119. And "courts of equity may interpose an equitable bar, whenever, from the lapse of time and laches of the complainant, it would be inequitable to allow a party to enforce his legal rights." § 3-712. The purchase of the property in question was made on September 20, 1919, the date of the bond for title, and the purchaser remained in possession until the bringing of this suit, February 8, 1935. In other words, he has been in possession for more than fifteen years, and the deed to Mrs. Pruden, which shows the condi-

tion of her title and her daughter's, has been on record longer than that. The plaintiff has not been disturbed in his possession of the premises, nor is there any threat of disturbance. Clearly, under the facts alleged, he has been guilty of such laches as will prevent a rescission and the recovery which he seeks in a court of equity. In *Henderson* v. *Fields,* 143 *Ga.* 547 (85 S. E. 741), it was said: "A purchaser of land, who is in undisturbed possession under his vendor's bond to make or cause to be made good and sufficient title on the payment of the purchase-money, can not recover from the vendor partial payments made on the purchase-price solely on the ground of a defect in the vendor's title. Such relief is dependent upon the vendee's equitable right of rescission or cancellation, which does not exist unless he allege that the vendor is insolvent or a non-resident or some other fact which would make it inequitable for the vendor to hold the purchase-money already paid and to collect the balance. . . A distinction between a purchaser in possession under an executed deed and one in possession under a bond to make title has been attempted. Where a vendee takes the precaution to secure himself by a bond covenanting to convey by good and sufficient title, though we may consider the covenant to convey as an executory contract, there can be no difference between the purchaser who enters under a deed and the one who enters under a bond for title. In the latter case the vendee has his remedy upon the covenants in the bond and would be subject to the general rule, unless there be fraud or eviction." In *Mathis* v. *Crowley,* 146 *Ga.* 749 (92 S. E. 213), the principle was reiterated. Justice Fish there cited *Henderson v. Fields,* supra, and said: "Such relief is dependent upon the grantee's equitable right of rescission or cancellation, which does not exist unless he allege that the grantor is insolvent or a non-resident, or allege fraud, mutual mistake, or some other fact which would make it inequitable for the grantor to hold the purchase-money already paid and to collect the balance." In *Hardin* v. *Adair,* 140 *Ga.* 263 (78 S. E. 1073, 47 L. R. A. (N. S.) 896), the principles which we have recognized were restated; and while the facts of that case were different from the facts of this case in certain features, there is sufficient similarity to make what was said there applicable here. This court said: "Under the facts of the case the court properly held

that the petition should be dismissed. The plaintiff had been guilty of such laches as would render it clearly unjust and inequitable at this date to enforce her demand for a resale of the property. Section 4369 of the Civil Code [1910] is as follows: 'The limitations herein provided apply equally to all courts; and in addition to the above, courts of equity may interpose an equitable bar, whenever, from lapse of time and laches of the complainant, it would be inequitable to allow a party to enforce his legal rights.' . . In the two years between the sale and the filing of the petition in the present case she has had an opportunity to watch the trend of the market for real estate in the locality in which the property in controversy is situated, and to ascertain whether it would be profitable or not to press her claim of a right to a resale or to abandon it. If bona fide she had desired to have a resale and to have opportunity of bidding on this property, she should have proceeded promptly. In reference to an analogous question, the substance of a decision of the Supreme Court of the United States is thus stated by Mr. Pomeroy, in his work on Equity Jurisprudence: 'As the question whether the sale should be vacated or not depends upon the facts as they existed at the time of the sale, so, in taking proceedings to avoid such sale, the plaintiff should act upon his information as to such facts, and not delay for the purpose of ascertaining whether he is likely to be benefited by a rise in the property, since that would practically amount to throwing upon the purchaser any losses he might sustain by a fall, and denying him the benefit of a possible rise.' 5 Pomeroy's Eq. Jur. 47. Under the circumstances alleged in this petition, the plaintiff could not wait and make her action in setting aside the sale dependent upon the question whether it is likely to prove a profitable speculation." See also *Black* v. *Walker*, 98 *Ga.* 31 (26 S. E. 477).

In view of the equitable principles above stated, which appear in our statute law and in the decisions cited and others not cited, the general demurrer should have been sustained.

*Judgment reversed. All the Justices concur.*