REID, Chief Justice, ATKINSON, Presiding Justice, and BELL, Justice, being of the opinion that the judgment of the trial court should be affirmed, and Justices JENKINS, GRICE, and DUCKWORTH, being of the contrary opinion, the judgment stands affirmed by operation of law.
 No. 13456. APRIL 5, 1941.
This suit is for principal and interest upon promissory notes given by the defendant, M. M. Middleton, to the plaintiffs, Mrs. Varina B. Pruden, Mrs. Elizabeth Pruden Fagan, and Mrs. Margaret Pruden Lester, for the purchase of lands in Floyd County, Georgia. In a former suit between the same parties, in which Middleton was the plaintiff and the others were the defendants, Middleton sought cancellation of the bond for title taken by him and of the promissory notes given therefor, on the alleged ground that he discovered, some years after the contract of purchase was made, that the defendants, Mrs. Pruden and her two daughters, could not make to him good and sufficient title, because of the stipulation contained in the deed under which Mrs. Pruden held and owned the property, that stipulation being that the lands were *Page 894 
granted and conveyed to her in trust for life, "and on her decease to such child or children or representative of such child or children as she may leave in life, and if she leave no child or children, then this property to go to Varina Berry's relatives on the father's side of the family;" she and her children being then all in life. It was alleged in the petition that Mrs. Fagan has a living child. When that case was here for decision this court ruled that the plaintiff's action should have been dismissed on demurrer, for that the plaintiff was guilty of laches in not moving sooner to have the transaction and the papers evidencing same canceled. Pruden v. Middleton,182 Ga. 687 (186 S.E. 732). Middleton brought a second suit, on the same statement of facts. This suit was a tort action based on fraud and deceit, alleging in general language actual and intentional fraud as alleged in the original equity suit. Otherwise the allegations were substantially the same, but the prayers in the second suit were for damages in tort. The Court of Appeals held the action was barred by the statute of limitations.Middleton v. Pruden, 57 Ga. App. 555 (196 S.E. 259). The defendants in the former suits, as the holders and owners of Middleton's promissory notes, brought the present action. The defendant by his answer and the amendment thereto set up practically all the claims made by him in the two former suits, though now relying in part on alleged failure of consideration in that the plaintiffs are unable to make to him good and sufficient title. He further asserted in his answer that the plaintiffs refused to accept back the bond for title which he tendered to them, and surrender to him his promissory notes, he offering at the same time to vacate the premises and deliver possession to them, and to account to the plaintiffs for the rent. The answer as amended also contained the following:
"Defendant shows that at the time he executed said notes that he had no knowledge of any defect in said title and that plaintiffs could not make him a good and sufficient title to said lands, but on the contrary shows that plaintiffs specifically stated that the youngest child of the said Mrs. Varina Pruden had arrived at the age of 21 years and that they could make to him a good and sufficient title to said lands; and believing said statements to be true, and acting in the utmost good faith, that he did contract to purchase said lands, and did execute the notes sued upon, and that *Page 895 
said plaintiffs did execute and deliver to him the bond for title hereto attached; that said representation and statements were made to him for the purpose of inducing him to buy said land and to execute said notes for the purchase-price thereof, and that the same constituted and was fraud on the part of the plaintiffs, and that he would not have signed and executed said notes if it had not been on account of the same. Defendant shows that he remained on said lands, making certain payments as will be hereinafter referred to, paying the taxes on said land in accordance with the provisions of said bond for title, maintaining insurance on the buildings, and made certain permanent improvements thereon, as will [be] hereinafter set forth, all of which was done in good faith, believing that the title to said land was in plaintiffs, and that they could make to him a good and sufficient title upon his complying with said provisions of said bond for title, until on or about September 12, 1934, when he was informed that the title of said plaintiffs was defective and that they could not make to defendant a good and sufficient title thereto." Immediately thereafter the defendant "took the matter up with said plaintiffs, to see if anything could be done to protect the title, and at their solicitation and request nothing was done, awaiting an opinion from the attorneys representing plaintiffs, as to whether or not title could be perfected to said land, and finally on or about the 12th day of January, 1935, said plaintiffs refused to negotiate further, and informed defendant that they could not correct the defect in title to said lands and could not give him a good and sufficient title thereto. Thereupon . . he immediately tendered back to the plaintiffs the bond for title heretofore referred to, offered to vacate the premises and deliver possession to them, offered to account to said plaintiffs for the rents of said property from September 20, 1919, and demanded the return of said notes executed to said plaintiffs for the remaining unpaid purchase-price of said lands, and demanded that an accounting be had with him for all of the money paid to said plaintiffs, taxes paid by the defendant during said period of time, and for the value of improvements and moneys expended on said lands. Plaintiffs refused to accept said bond for title, and refused to accept possession of said lands, and refused to account to defendant for the money so expended by him, and refused to surrender said purchase-money notes. Defendant *Page 896 
here and now tenders to said plaintiffs said bond for title executed by them and said property, and shows that he is willing to account to said plaintiffs for the reasonable rental value of said lands during the time that the same was in his possession, and that said plaintiffs should account to him for all moneys paid on the purchase-price of said land, taxes, insurance, and all moneys expended for permanent improvements on said land as will be hereinafter set forth. That all of said money so expended in the improvement of said land, payment for taxes and insurance, was done in good faith by this defendant and in the belief that the representations made to him as to the title to said land was true; and to permit said plaintiffs to receive the benefit thereof would constitute a fraud and would be contrary to equity and good conscience. That your defendant was ready at said time to pay the plaintiffs and settle with them in full in reference to said land, and is now ready to make payment whenever the plaintiffs will make or furnish him with title to said lands in accordance with the terms of the bond for title, but which they are unable to do on account of the facts herein before set forth."
The answer further alleged the sums of money paid by the defendant for insurance, taxes, and improvements, for which it was contended the plaintiffs should account to the defendant, along with all moneys paid by him on the purchase-price; and further alleged the annual rental value of the land, for which he was willing to account to the plaintiffs. "Defendant shows that on account of the facts set forth that said plaintiffs are indebted to him in the sum of $9979.35, together with interest thereon, and that he asks judgment against said plaintiffs for said amount." On the basis of these and other averments, the defendant also prayed that the court find in his favor "that he is entitled to damages for the breach of the terms of said bond for title by said plaintiffs, in said sum of $9979.35, together with interest thereon, and that he have such other and further relief as to the court may seem meet and proper in the premises." Among other things, the following appears in his answer: "That the allegations of the eighth paragraph of the petition are denied, and, on account of the facts hereinafter set forth, that this defendant is not indebted to the plaintiffs in any sum whatever, and they are not entitled to a lien on any property or lands whatever. Further answering, this defendant *Page 897 
shows that there has been a complete failure of consideration, for said notes, in that the same were given in payment of the land described in paragraph six of the petition, and that title to said land was not at said time, and is not now, vested in said plaintiffs." And paragraph twenty-four of the answer as amended is as follows: "Defendant shows that on account of the facts set forth the terms of the bond for title have been breached by said plaintiffs, and they are liable to him on account thereof. That on account of the fact set forth it would have been useless to have tendered to said plaintiffs the money due, for the reason that they had informed him that they could not comply with the terms of said bond for title, and, as heretofore set forth, their failure to execute to him such a deed as contemplated by said bond for title was and is a breach of the terms thereof, for which they would be liable." And paragraph thirty-two of the answer was as follows: "The defendant shows that on account of said breach of said bond for title he is entitled to recover from the plaintiffs all moneys paid on the purchase-price thereof, taxes paid by him, insurance premiums paid by him, and all moneys for improvements and the value thereof on said place by said defendant, less the reasonable rental value of said lands for the period of time that the same has been occupied by him." The thirty-third paragraph is an allegation that plaintiffs are indebted to him in the sum of $9979.35, together with interest, "and that he asks judgment against said plaintiffs for said amount."
In the instant case the plaintiffs, in paragraph 7 of their petition, set forth that as a further security the defendant had executed to them a deed to certain other described property. The answer as amended included a prayer "that the deed referred to in the 7th paragraph of said petition be canceled, and that title to said property be vested in this defendant, free from any claims or liens of said plaintiffs." The defendant also prayed for an accounting. To his answer as amended the plaintiffs demurred generally and specially. Without passing on the special grounds of demurrer, the court sustained the general demurrer and struck the answer, "except paragraphs one to eight, inclusive, of the original answer, and except in so far as the answer and the amendments set up and plead payment and credits in addition to the credits allowed in the plaintiffs' petition." On the trial the jury, under direction *Page 898 
of the court, returned a verdict in favor of the plaintiffs for principal and interest. The defendant's motion for new trial was overruled. He excepted to that ruling, as well as to the order striking the main portions of his answer.
Three members of the court, to wit, Chief Justice Reid, Presiding Justice Atkinson, and Justice Bell, are of the following opinion: The defendant's answer as amended did not pray in express terms for rescission, and was nowhere designated as a plea or cross-action seeking rescission; yet, construed according to its allegations and prayers, it is in effect a cross-action seeking the affirmative equitable relief of rescission, cancellation, and accounting; and the case as now presented is controlled adversely to the defendant by the former decision of this court in Pruden v. Middleton, 182 Ga. 687
(186 S.E. 732), wherein the same party, then as plaintiff, was seeking cancellation, rescission, and accounting. The present litigation is between the same parties, and involves the same contract. The answer of the defendant in the present suit contains substantially the same allegations as those made in his petition in the former suit, and to all intents and purposes he is seeking the same affirmative equitable relief. The former decision is therefore the law of the case, and as such it is binding upon the defendant, to the effect that he is barred by laches. If the defendant here had done nothing more than offer to return the land and resist payment of the notes sued on, a different question might have been presented. It is true that he actually did both these things; but on proper construction of the answer as a whole he resisted payment for particular reasons set forth in his answer, and for these reasons only, to wit, that he desired to rescind the contract and elected to do so. Thus he is bound by the law as laid down in the previous decision on the question of laches. "A contract may be rescinded at the instance of the party defrauded; but in order to rescind he must promptly, upon discovery of the fraud, restore or offer to restore to the other whatever he has received by virtue of the contract, if it be of any value." Code, § 20-906. The reference to failure of consideration is wholly ineffectual as stating any defense, for the reason that no damage whatever is pleaded as for a partial failure of consideration, *Page 899 
and the allegations show that there is not a total failure. He pleaded only what should be the rights and liabilities of the parties on a complete rescission. As to total failure, he still has the land, and may never lose it. There is only a contingent defect in title, depending on survivorship. This would not show a total failure of consideration. Accordingly, the rulings of the court striking the plea and directing the verdict, and the judgment refusing a new trial, should be affirmed.
The writer entertains a different view of the case, being of the following opinion: In the former case in this court Middleton was the plaintiff. He sought affirmative equitable relief. He asked that the contract be rescinded for fraud. Relief was denied him on the ground of laches. It was not adjudged that under the allegations there made Middleton had no rights in the premises. The statement in the headnote that "the court erred in not sustaining the general demurrer and dismissing the action," must be read in connection with the opinion. Looking thereto, it seems plain that the only ruling made was that Middletown could not recover, because barred by laches. So we have presented to us this question: Will the fact that a plaintiff is barred by laches from seeking on his own petition affirmative equitable relief prevent him, when later sued, from asserting as a defense the same facts set up in his petition (assuming that such facts constitute a good defense), the parties being the same in both actions? The defense of laches is peculiar to courts of equity, and is not pleadable in actions at law. Wehrman v. Conklin,155 U.S. 314 (15 Sup. Ct. 129, 39 L. ed. 167); Waits v. Moore,89 Ark. 19 (115 S.W. 931); Wells v. Western Union Telegraph Co.,144 Iowa, 605, 123 N.W. 371, 138 Am. St. R. 317, 24 L.R.A. (N.S.) 1045); Commercial Security Co. v. Archer, 179 Ky. 842
(201 S.W. 479; Hunter v. Moore (Mo.), 202 S.W. 544; Flesner v.
Cooper, 62 Okla. 263 (162 P. 1112); Kenny v. McKenzie, 25 S.D. 485
(127 N.W. 597, 49 L.R.A. (N.S.) 782); Burleigh v.
Hecht, 22 S.D. 301 (117 N.W. 367); Hogg v. Shield, 114 Va. 403
(76 S.E. 934). The doctrine is available only as a bar to affirmative relief; and hence where no such relief is asked by defendant, plaintiff can not urge laches to bar a right asserted by defendant merely by way of defense. 21 C. J. § 212. CompareGeorgia Railroad Banking Co. v. Wright, 124 Ga. 596 (18), 619, 620 *Page 900 
(53 S.E. 251); Bowen v. Nelson, 135 Ga. 567, 69 S.E. 1115);Redding v. Anderson, 144 Ga. 100 (86 S.E. 241); City ofBarnesville v. Stafford, 161 Ga. 588 (134 S.E. 487). That part of the plea which by way of cross-action sought cancellation of the deed given by Middleton as further security was, under the former decision of this court, properly stricken; but as to the other portions of the plea which, in the opinion of the writer, did not seek affirmative equitable relief, he was not concluded by the former decision. When sued at law he could urge a defense, though equitable in its nature, which did not invoke the exercise of any of the extraordinary powers of a court of equity, but which if sustained would as effectually defeat the plaintiffs' claim as if cancellation were had. House v. Oliver, 123 Ga. 784
(51 S.E. 722); Norton v. Graham, 130 Ga. 391
(60 S.E. 1049); Clower v. Bryan, 175 Ga. 790 (166 S.E. 194). A party brought into court as a defendant may, as in this instance, though forbidden to urge a certain state of facts as a sword for attack, nevertheless use it effectively as a shield for his protection. See 19 Am. Jur. § 40. The matters set up in the plea by way of defense arose out of the same contract as sued on; and they may be pleaded in recoupment. Code, §§ 20-1311, 20-1312, 20-1313, 20-1314. The section last cited is in part as follows: "Recoupment may be pleaded in all actions ex contractu, where from any reason the plaintiff under the same contract is in good conscience liable to the defendant."
We come to this question: In an action upon promissory notes given for the purchase of land, may the defendant, remaining in possession, plead in defense thereto that he holds from the plaintiffs a bond conditioned to make good and sufficient title to the land; that the plaintiffs are unable to convey to him such title; that when he discovered this he immediately tendered back the bond for title, offered to vacate the premises, deliver possession to them, and account to them for the rents; that he entered into said contract of purchase relying on certain representations made by the plaintiffs to him, the effect of which was that they could and would convey a valid title, which representations were untrue, and where made to him for the purpose of inducing him to purchase said land, and which constituted fraud on their part; and pray for an accounting and for judgment against the plaintiffs for such sums as may be due him by reason of many expenditures by him *Page 901 
for improvements, taxes, etc., at the same time averring his willingness to make payment to the plaintiffs whenever they will make him title to the lands in accordance with the bond? A representation by one that he has title, made for the purpose of inducing another to purchase the property, when untrue, constitutes fraud. Compare Williams v. State, 105 Ga. 606
(31 S.E. 546); Holton v. State, 109 Ga. 127
(34 S.E. 358); James v. State, 43 Ga. App. 324 (158 S.E. 644);Diamond v. State, 52 Ga. App. 184 (182 S.E. 813), Where an obligor is a bond for title, selling for his own benefit, agrees therein to execute a good and sufficient title, he undertakes to convey "a good marketable title, — such a title as a reasonably prudent man would accept in purchasing the land or in a securing a loan of money." Horne v. Rodgers, 113 Ga. 224, 227
(38 S.E. 768); Toomey v. Read, 133 Ga. 855, 858 (67 S.E. 100.) In view of the allegation in the answer that the plaintiffs were unable to convey title, it was not necessary that a demand to make title be averred. Baynes v. Bernhard, 12 Ga. 150, 154. The decision in Sanderlin v. Willis, 94 Ga. 171
(21 S.E. 291), while recognizing the rule that a purchaser of land who enters into possession under a warranty deed or bond for title can not, before eviction, defeat an action for the purchase-money, unless there has been fraud on the part of the vendor, or the latter is insolvent, or there is some other ground which would be equity entitle the purchaser to relief, nevertheless held that the obligee in a bond for title, who has paid a part of the purchase-money for the land to which the bond relates, may, when sued in a court having no equity jurisdiction by the maker of the bond upon a note given for the balance, recoup his damages resulting from a breach of the bond, notwithstanding he retains possession of the land, he having at the maturity of the note offered to pay the same and demanded compliance with the terms of the bond, and by his plea offering to surrender possession and to account for rents during the time of his occupation of the premises. In Black v. Walker,98 Ga. 31 (26 S.E. 477), where this court was dealing with a suit that arose in a court other than one exercising equity powers, it was recognized that the maker of notes given for the purchase-money of land of which such maker holds undisturbed possession under a bond from the vendor, conditioned to make to the former a good and sufficient title upon the payment of the notes, could defeat the collection of the notes upon *Page 902 
the ground that the vendor had not in fact good title, without showing that there was a paramount outstanding title against the grantor and also fraud on his part.
In Johnson v. Dorough, 99 Ga. 644 (27 S.E. 187), the trial court's judgment was reversed for striking on general demurrer a plea to an action of complaint on notes, the plea averring that the notes were given for the purchase-money of land held by him under bond for title, and that the plaintiff in making the sale of the land falsely represented that he owned the same in fee, when in fact he only owned an estate for the life of another. It is true that the plea set up other facts, but the court said that "The special pleas dealt with in the present case fall clearly within the exceptions pointed out by this court inBlack v. Walker," supra. The Johnson decision seems to recognize that it is not necessary to show a paramount outstanding title, when it is averred that the obligor does not own the fee-simple title to the land. In Preston v. Walker,109 Ga. 290 (34 S.E. 571), the ruling in the Sanderlin case, supra, was repeated, the following language appearing in the opinion: "This case is controlled by the case of Sanderlin v.Willis, 94 Ga. 171. The facts are very similar, but those in this case are stronger in behalf of the defendant than the facts were in behalf of Sanderlin in that case. Here the defendant shows absolutely that the plaintiffs can not make him a title in fee simple to the land, because three of them, Lucy, Emma, and Ida, according to the deed under which they claim the land, have only a life-estate, and Williams, the brother and one of the plaintiff in the suit upon the notes, has not title at all, as his name is not mentioned in the deed from Johnson to the three sisters. Another difference between this case and that ofSanderlin is that it was alleged in the plea and proved at the trial that these plaintiffs were insolvent; which would bring this case somewhat under the decision of Black v. Walker,98 Ga. 31, and Johnson v. Dorough, 99 Ga. 644. The reasoning of Mr. Justice Lumpkin in the Sanderlin case fully covers the questions involved in this case, and it is unnecessary to elaborate them." Norton v. Graham, supra, is another case in point, although there the purchaser apparently was not in possession. Space forbids setting out the facts of that case, but the decision itself recognizes the principle now being asserted. We quote in part as follows: "The Civil Code, § 3758, [1933, § 20-1313] *Page 903 
provides: `Recoupment lies for overpayments by defendant, or payments by fraud, accident or mistake." § 3756 [1933, § 20-1311] says that a defendant has a right, by way of recoupment, to have a deduction from the plaintiff's damages, if the plaintiff has not complied with the cross-obligations or independent covenants arising under the same contract. And § 3759 [1933, § 20-1314] is as follows: `Recoupment may be pleaded in all actions ex contractu, where from any reason the plaintiff under the same contract is in good conscience liable to the defendant. And in all cases where, under the laws of this State, recoupment may be pleaded, if the damages of the defendant shall exceed, in amount, those of the plaintiff, the defendant shall in such cases recover of the plaintiff the amount of the excess.' According to the allegations of the defendant's plea, the payments made by him to the plaintiff on the purchase-money resulted from the same transaction and same fraud which gave origin to the note sued on; and under the sections of the Code above quoted, the city court had jurisdiction to entertain this defense and give the defendant a verdict should he prove the allegations of his plea, regardless of the place of residence of the plaintiff, or his solvency or insolvency; and the adequate remedy which that forum affords the defendant renders it unnecessary that a court, acting in his behalf, should interfere with the suit pending therein."
My conclusion is that the plea of the defendant contained facts which as against a general demurrer should not have been stricken. Since, in the opinion of the writer, the answer set up a good defense which might be asserted in a court of law, irrespective of the prayer for cancellation, to which reference has heretofore been made; and since a general demurrer goes to the whole pleading to which it is addressed, and should be overruled if any part thereof is good in substance (Blaylock v.Hackel, 164 Ga. 257 (5), 138 S.E. 323; Pullen v. GeneralAmerican Credits Inc., 186 Ga. 642, 647, 198 S.E. 747), the ruling sustaining a general demurrer to the answer as amended (except that portion which averred certain payments) was, I think, erroneous. If so, it follows that it was also erroneous, in view of this error, to refuse a new trial. having been denied relief in equity on the ground of laches, and at law by reason of the bar of the statute of limitations, in the two suits begun by him (Pruden v. Middleton, 182 Ga. 687, 186 S.E. 732;Middleton v. *Page 904 Pruden, 57 Ga. App. 555, 196 S.E. 259), if when sued on notes given for the purchase-money of land the defendant files a plea the contents of which are herein before summarized, he is told again that the court can grant no relief, not even protective relief, would he not be justified in voicing the exclamation of the prophet Jeremiah, "Is there no balm in Gilead?"
Mr. Justice Duckworth agrees with the writer in the view here expressed. Mr. Justice Jenkins is of the opinion that the judgment should be reversed, and is in partial agreement with the views of the writer, as will be seen by his special concurrence.
Judgment affirmed by operation of law.