## WILLIAMS *v.* THE STATE.

1. One who, for the purpose of deceiving another and obtaining a credit, makes a false and fraudulent representation to the effect that he has purchased and has become the owner of valuable property, and who in this manner defrauds the person to whom such representation is made of money, or other thing of value, is guilty of being a cheat and swindler, under section 658 of the Penal Code.
2. A settlement between such a wrong-doer and the person defrauded, made after the commission of the offense and the arrest of the for· mer upon a warrant charging him therewith, constitutes no bar to his conviction thereof upon an indictment subsequently returned.
3. The venue was sufficiently proved, and there was ample evidence to establish the guilt of the accused.

Submitted October 3, — Decided October 12, 1898.

Certiorari.    Before Judge Gamble.    Screven superior court. May 30, 1898.

*Brannen & Moore* and *James K. Hines,* for plaintiff in error. *B. T. Rawlings, solicitor-general,* contra.

LUMPKIN, P. J.    An indictment against G. W. M. Williams, found by the grand jury of Screven county and transferred for trial to the county court thereof, charged that the accused " did falsely and fraudulently represent to J. C. White that he, the said Williams, had purchased the Cuyler & Woodburn R. R. for the sum of twenty-seven thousand dollars, and that he had raised all of the purchase-price except one hundred dollars, and was then on his way to Savannah to pay the purchase-money. By these false and fraudulent representations the said G. W. M. Williams fraudulently induced the said J. C. White to lend him, the said G. W. M. Williams, the sum of one hundred dollars, which he promised to pay back within three days from the date of the loan.    These representations, made as aforesaid, were all false and fraudulent, and were made by the said Williams for the

purpose of defrauding the said White, and did in point of fact defraud the said White, contrary to the laws of the said State, the good order, peace and diginity thereof." At the trial, the State introduced testimony substantiating all the material allegations of the indictment. It distinctly appeared that in the conversation between the accused and White which resulted in the former's procuring the loan, he claimed to be the owner of the railroad in question. For instance, he used the expression, "I don't want to encumber my road," and other language indicating a purpose on his part to create the impression that the railroad was his property. It was further shown by the State that White was actually defrauded of $100, and that Williams did not repay the loan as he had agreed to do. Evidence in behalf of the accused tended to show the following: After Williams, had been arrested upon a warrant charging him with being a cheat and swindler, and before he was indicted, he made a settlement with White by delivering to him the promissory note of E. E. Wood & Co. for $100, which White accepted in full satisfaction of his demand against Williams, and afterwards sold for $90. There was a verdict of guilty in the county court, and by his petition for certiorari Williams alleged error as follows: First, that the county judge erred in charging the jury, "If you should find that the defendant made false and fraudulent representations to the prosecutor as to having purchased and being the owner of a certain railroad, when in fact he had not purchased said road and was not the owner of the same, and that such representations were made to deceive the party to whom the application was made, and he acted upon them, whereby he was defrauded, you would be authorized to find him guilty." Second, the judge erroneously charged that "a settlement of the debt by White after the warrant had been sworn out, and the defendant was under arrest or under bond, would be no bar to the prosecution." And, third, that the verdict was contrary to law and the evidence.

1. The first charge complained of was, in substance, a correct statement of the law. The main criticism made upon it in the brief of counsel for the plaintiff in error is, that there was no evidence to show that the accused claimed to be the owner of

the railroad. This point is sufficiently answered by referring to the foregoing summary of the evidence introduced in behalf of the State.

2. We are also of the opinion that the second charge excepted to was free from error. That a fraud was perpetrated upon White plainly appeared. As a result of this fraud he was deprived of the possession and use of his money, and it is apparent from the evidence as a whole that there was a criminal intent on the part of Williams not to return the money at all. That he was subsequently forced to make restitution, which, as will have been seen, was only partial, did not relieve him of the consequences of his violation of the criminal statute, which was complete before his arrest. As well might it be said that one guilty of a larceny could escape prosecution by returning the stolen goods after being arrested for the offense.

3. As already stated, the case for the State was fully made out. It was argued here that there was no proof of venue; but an examination of the record before us discloses that this point was not well taken. White, as a witness for the State, after detailing the conversation which had occurred between himself and Williams under a certain oak, and stating that he and Williams then went to the railroad-station, where a draft for $100 was delivered to the latter, added: "That was in the county of Screven." The word "that," as here used, may well be understood as referring, not only to what occurred at the station, but also to what took place between Williams and White under the oak, there being but one transaction under investigation.

*Judgment affirmed.   All the Justices concurring.*