21561.  COLEMAN *v.* THE STATE.

DECIDED JULY 15, 1931.

*Kirkland & Kirkland,* for plaintiff in error.

*Marvin L. Gross, solicitor-general,* contra.

LUKE, J.  The indictment in this case charges that on September 1, 1927, in Emanuel county, L. B. Coleman and Grover Canady committed the offense of larceny, by stealing "one black Guinea bull about three years old, of the value of $35 in money, and being the personal property of Mrs. Calsie Hooks."  L. B. Coleman, the movant here, was separately tried and convicted, with the recommendation that he be punished as for a misdemeanor.  His sentence was that he pay a fine of $200 or serve on the public works for

twelve months. The gist of the State's case is: that Mrs. Calsie Hooks owned the said bull; that it ran at large; that the defendant came alone to a field where Mrs. Hooks was and asked if she had any cattle to sell; that Mrs. Hooks told the defendant that if he would find the said animal and pen him somewhere, she would come and look at him and see if they could agree upon a price; that Mrs. Hooks never agreed with the defendant that he could find the animal and butcher him and pay for him later; that the bull had been butchered by the defendant three or four weeks before Mrs. Hooks found out about it through "Uncle Billy Strange;" that H. J. Rountree discovered the defendant and Grover Canady butchering said bull in the woods some distance from the public road where defendant found the animal, and several miles from the home of Mrs. Hooks; that B. H. Hooks, who was the son of Mrs. Hooks and managed her business for her, saw Mr. R. A. Flanders, president of the Central Bank of Swainsboro, and an agreement was made between Hooks and his mother and the defendant that if the latter would pay $30 for the animal, the matter would be a closed incident so far as Mrs. Hooks was concerned; that the defendant deposited said amount in said bank to Mrs. Hooks' credit and she got the money; and that Mrs. Hooks never encouraged or instituted the subsequent prosecution of the defendant. The gist of the defense was that the defendant went to see Mrs. Hooks in her field and entered into an agreement with her whereby he bought the bull on condition that he would find and pay for the animal later; that he found and butchered the animal, under this agreement, in good faith, and that the reason he did not pay sooner was that he could not, because the party to whom he sold the bull did not pay him.

■ The jury having accepted as true the testimony of the State's witnesses and rejected the theory that the defendant took the animal under a fair claim of right, it does not lie within the power of this court to reverse the judgment, upon the general grounds of the motion for a new trial. Of course, restitution made after an offense is committed will not absolve a defendant from guilt.

■ Special ground 1 avers that the trial judge erred in admitting certain testimony of the State's witness H. J. Rountree. We quote from the ground: "Q. Did any one come to your house

looking for this cow later on? A. Yes, sir; about two or three months after this, old Uncle Billy Strange . . came there hunting this bull. Q. Did you tell him where the bull was? A. Yes, sir. Mr. Kirkland: I object to it and move to rule it out on the grounds that it is irrelevant, and a statement three months after the alleged crime was committed . . is irrelevant, inadmissible, and should be excluded. The court: I overrule the objection to it; let it in to illustrate the conduct—what Strange did thereafter when he got the information." The evidence objected to was mere matter of inducement, to show why Strange entered upon the investigation which appears to have resulted in the information which led to the prosecution, and was not harmful to the defendant. See *Kelly* v. *State*, 82 *Ga.* 441 (3) (9 S. E. 171). Special ground 1 discloses no reversible error.

■ It appears from special ground 2 that while B. H. Hooks was on cross-examination the following occurred: "Q. You don't know whether Mr. Coleman ever got pay for the cow or not? A. No, sir, I don't. The court: That would be immaterial,—whether he got pay for it or not; that has got nothing to do with the case." The ground recites that "the object of the testimony was to show that Mr. Coleman purchased the cow on credit, and that he afterwards, acting in good faith, killed the cow and paid for it," and that "it was prejudicial to the movant to have said testimony excluded." Since the witness testified that he did not know whether or not the defendant paid for the animal, we fail to see how the ruling of the court could possibly have resulted in injury to the defendant. Furthermore, it positively appears, both from the statement of the defendant and from the testimony of the State's witnesses, that the cow was paid for, and the question was not in issue. Clearly this ground has no merit.

■ Special ground 3 complains that the court erred in not allowing the witness R. A. Flanders to testify that the defendant made the following statement to him: "He told me that he had sold this beef to Mrs. Hall and could not collect the money." We hold that this statement of the accused, made after the animal had been butchered and sold by him, was properly excluded as being a self-serving declaration.

■ The fourth and last special ground complains that "the court failed to charge that the publicity of the taking was a cir-

cumstance that the jury might take into consideration with the other facts in the case, and ascertain as to 'whether or not the defendant was guilty." In arguing this ground counsel for the plaintiff in error state the contention of the defendant in this language: "The line of defense for plaintiff in error was that he purchased the cow, that he killed the cow according to contract, that he paid for the cow, that he killed it in the open during the day, . . and that there was no intention on his part to commit any crime." The defendant's real contention hinges upon his alleged contract of purchase. According to the State's evidence, the bull was butchered about a mile from the public road and about six miles from Mrs. Hooks' residence, and in a secluded spot. Grover Canady, who was jointly indicted with the defendant, swore that "Mr. Coleman did not kill the cow on the public road. . . He drove it up there under an oak, . . about two or three hundred yards from the public road, and kinder up on a little hill, behind the head of a little branch, up there next to the field." The defendant, in his statement to the jury, said nothing whatever about the place where the animal was butchered. Therefore there appears to have been no occasion to give the charge in question. Again, there was no request to give such a charge to the jury. Clearly this ground discloses no reversible error.

Having covered every question raised by the record in this case, we hold that the trial judge did not err in overruling the motion for a new trial.

*Judgment affirmed. Broyles, C. J., concurs. Bloodworth, J., absent on account of illness.*