## 25022. GREEN v. THE STATE.

DECIDED OCTOBER 18, 1935.

*M. G. Hicks, Philip N. Jobson,* for plaintiff in error.

*John S. McClelland, solicitor, John A. Boykin, solicitor-general, J. W. LeCraw,* contra.

GUERRY, J.   J. M. Green was convicted in the criminal court of Atlanta of the offense of cheating and swindling. His certiorari was overruled, and he excepted. The accusation charged that on May 15, 1934, he "did by deceitful means and artful practices obtain of and from Crescent Farms Inc. dollars of the value of $119.15 and the property of Crescent Farms Inc., with intent to defraud Crescent Farms Inc. with deceitful means and artful practices being as follows: (a) Accused did represent orally to R. L. Ballard, an officer, and duly authorized agent and employee of Crescent Farms Inc., that accused had on hand in storage at Ft. Valley, Ga., in his barn, a great number of wooden bushel baskets (30,000) used for shipping produce and plants in, that they were for sale by accused, that he was selling them rapidly, that the baskets were then in possession of accused and could be delivered on any date and at any place, that said baskets were worth 75¢ per dozen, that they were worth $624.75 per ten thousand of them; that he would have said 10,000 baskets delivered to Crescent Farms Inc. or its order. (b) Said representations were false when so made by accused, and were known to accused to be false.   (c) Said representations were made by accused with intent to defraud Crescent Farms Inc.   (d) By means of false and fraudulent representations accused did defraud Crescent Farms Inc. of $119.15.   (e) Said false representations related to a past fact and existing facts.   (f) Relying on said representations to be true, the said Cresent Farms Inc. was induced to part with the above described sum of money.   (g) Said representations were false in that accused at the time said repre-

sentations were made did not have in his custody or possession said baskets and accused knew at the time said representations were made that he did not have, or own, said baskets and that he could not deliver the same; all of said acts of accused were and are contrary to the laws of said State," etc.

R. L. Ballard, secretary of Crescent Farms Inc., which was engaged in handling produce and shipping plants, talked to the defendant with reference to some baskets on or about the date alleged. The defendant was operating a farmers' market on Central Avenue in Atlanta, Ga. He told Ballard: "I have a lot of baskets on my farm in Fort Valley, stored in my barn, and would be glad to sell you some of the baskets. We are going to offer them at 75 cents per dozen." Ballard told defendant they would need quite a lot of these baskets to ship plants in, and further stated to him, "I would like for you to hold 10,000 of them until I can get in touch with my brother and get him to advise his approval on them." Defendant said that would be satisfactory, and that he would get in touch with his farm man on the 'phone and make arrangements to that effect. Some days later defendant told Ballard: "I have not heard from your brother, and they are selling those baskets quite rapidly; so I would like to have an answer on them baskets." Defendant told Ballard he had 30,000 baskets in his barn in Fort Valley. R. L. Ballard communicated this information to H. G. Ballard who was manager of the Crescent Farms Inc. H. G. Ballard testified that he lived in Worth County, near Sumner. On May 13 Crescent Farms Inc. wrote to defendant the following letter: "We have got to work fast on the basket deal. Expected to hear from you by now. Please advise us by wire to-morrow if you can load, and when. Would like to get a car loaded right away to go to Hartselle, Alabama. Tell us where we may arrive at a definite understanding. Who represents you, and where are the baskets. We may want to haul them; trying to get freight rates. Please ask C. of Ga. to send us rates from where they are to Hartselle, Ala." On May 15 an agent of Crescent Farms Inc. handed to the defendant a letter written May 14th as follows: "We are having unexpected passing to Atlanta, and am enclosing you check for $624.75 for the ten thousand baskets at 75 cents per dozen, which as I remember is the price. Please give Perry, the driver, an order for a load of them at this time, and load a large car of

them for Hartselle, Ala. I wrote you yesterday to get the RR to quote a rate. I wish I could see if the rate is too high to freight them; meantime we will do likewise; and if it's too high, we will just haul all of them ourselves, as we have the trucks idle now. We understand these are good baskets not over a year old, and good tops for the same. If it happens that you have a load of good baskets there in Atlanta with bright tops, we could as well use a load of them if the Fort Valley baskets will be inconvenient to get to. The used baskets, however, are very unsatisfactory, and we hope to get the new ones. It may be that we can use another ten thousand of them if they are OK." A telegram was sent to H. G. Ballard, Sumner, Georgia, by the defendant on May 15, as follows: "Baskets Ft. Valley no good can get load here by to-morrow advise via Western Union." Crescent Farms Inc. replied by telegram as follows: "Return truck to-day with what you have also ton paper." On the same day defendant wrote to Crescent Farms Inc. a letter as follows: "Mr. Perry gave me your letter last night, with check; and I also received one this morning by mail. After reading your letter I saw there was some misunderstanding about the age of the baskets; they were put in my packing-house in the spring of 1930, and have been there since that time, for the reason in this year hail hit my peaches, and I had to sell to the canneries; so that left the baskets. If I am not mistaken, this is what I told your brother. After examining the baskets I saw that they were worthless for your purpose or any other purpose, only to stop washes on the farm with, as they had dry rot and would not stand handling. I will have you several thousand of good baskets the latter part of the week, and I will have you a couple of loads by to-morrow night, and you can have them all as fast as you want them after tomorrow. I will have them on the lot in a shed that I can lock up, and will be taken care of until you call for them; or if you want them loaded on the R R, I can have them put in cars for you. . . I was sorry I had such a short time to get a load for your truck, but did the best I could until we got your wire to let the truck come back. I will see that it has all it can carry the next time it is here."

The defendant cashed the check; and while he claims that he sent 700 baskets that day, Ballard stated he received only 118. The evidence for the State tended to prove that the defendant had

not operated a farm in Fort Valley since 1925 or 1926, and had no baskets stored in any barn there. H. G. Ballard, on May 21, went to see the defendant to get a return of the money, and received on that day 1004 baskets. He testified: "I told Mr. Green: 'I want a settlement now on these baskets, and want to know how many you bought up here. I don't want to buy any more; the season is over.'" The defendant stated that he had 1800 in Atlanta in a warehouse. "I said, 'Mr. Green, you count those baskets up to-morrow. I will take whatever I am under obligations to take from you, and charge me up to them and send me back the money for the difference.' He said he would, and it rocked on. In about ten days or two weeks I sent a boy to the market to him up here, and told him to see Mr. Green. Mr. Green sent me word he had bought a whole lot of other baskets." Later Ballard came to see defendant, and was told that he had bought a whole lot of baskets and had them, "he first said, down below Griffin or Newnan; then he wound up by saying, 'I have sold those baskets to a man named N. C. Blount, who is going to come into town with a load of peaches to-night.'" The defendant failed to repay Ballard. In July a warrant was sworn out for the defendant. His attorney sent to the prosecutor a check for $313.28, marked "Settlement in full of claim against J. M. Green." The prosecutor did not cash the check, but had it certified, and now holds it. With the check was a statement charging Crescent Farms Inc. with 5800 baskets bought, amounting to $406, and crediting Green with a sale of them to N. C. Blount. A commission of 10 per cent. was charged on the purchase-price of the 10,000 baskets, amounting to $62.47. On May 24 Crescent Farms Inc. wired to the defendant: "How many baskets have you got together wire answer." On May 25 they wired: "Better discontinue buying baskets too late now." On May 27 the defendant wrote to Crescent Farms Inc.: "I have between three and four thousand bushel baskets and tops here, awaiting your instruction to ship or put on your truck. I have discontinued buying baskets as per your wire, and would like for you to give me instructions as to the disposition of the ones that I have here in storage." On June 2, Crescent Farms Inc. wrote to defendant: "The plant season is plum over, and we can not well use the baskets now. You may please send us some good bean hampers, if you can get them at 6 cents with tops, or 5 cents with-

out tops. They must be good, however, as we want them for beans. Can use two thousand of them this week." These two thousand bean hampers were shipped to Crescent Farms Inc.

The accusation charges that the defendant procured $119.15 from the prosecutor by falsely representing that he had on hand in Fort Valley a great number of wooden baskets used for shipping produce and plants, that they were being sold rapidly, and that he would have ten thousand of those baskets delivered at any time or place the purchaser desired; that these representations were false and were made with intent to defraud and did defraud the prosecutor, and did cause loss and damage. The evidence, while conflicting, was sufficient to show that the defendant did not have any such baskets at the time he made the representations, and that he knew this fact when he received and cashed the prosecutor's check for $624.75. The evidence fails to disclose that the representations made by wire at the time of the receipt of the check by the defendant changed the terms of purchase, or waived any reliance by the purchaser upon the representation made by the defendant. The defendant knew that the check sent to him was in purchase of goods expected by the prosecutor to be in existence, and was not sent to him as an agent to make purchase of the goods from others. In spite of this fact he cashed the check, took the money, knowing the terms under which it had been sent, and failed to account for the baskets. We think the evidence sufficient to support the verdict.

It is insisted that inasmuch as the check for $313.28, sent to the prosecutor on July 5, was marked "settlement in full," the failure of the prosecutor to return the check and his having it certified by the bank on which it was drawn amounted to a payment of the entire amount to Crescent Farms Inc. Even were this true, such would not be a bar to this prosecution. See *Lowe* v. *State,* 111 *Ga.* 650 (36 S. E. 856); *Williams* v. *State,* 105 *Ga.* 606 (31 S. E. 546).

*Judgment affirmed. Broyles, C. J., and MacIntyre, J., concur.*