## 43800. CHILDS v. THE STATE.

WHITMAN, Judge. 1. This case involves a criminal prosecution under *Code Ann.* § 13-9933 (Ga. L. 1962, p. 593) for uttering a worthless check. Under this statute all the elements necessary for conviction and imprisonment as a criminal for a misdemeanor are provided by the existence of a check or draft which has been returned for insufficient funds. The defendant was convicted and sentenced to 12 months confinement in the state penal system. The appeal is from the denial of his motion for a new trial on the general and special grounds. This and other matters are enumerated as error.

2. The court's review of the record in this case has caused it to inquire into whether such a crime may be "settled" between the parties. One Riner, the payee of the check involved, operated an automobile auction business. Childs, the defendant, had been doing business with Riner for about a year. Some of Childs' purchases were paid for by check but with a "floor plan" understanding, i.e., Riner would hold the check until Childs notified him he had re-sold the car and then Riner would deposit the check. Riner charged his customers an additional $25 for holding checks under this arrangement. Other transactions were termed "cash sales," i.e., the purchase was paid by check without any understanding that presentment would be delayed. There was evidence that Childs used both methods of payment in his transactions but there was also evidence that the check in question was given pursuant to a "cash sale" in the purchase of three automobiles. The check bounced. According to Riner this was the first time it had ever happened with Childs. He notified Childs and Childs told him if he would send it back through it would be all right. The check was sent back through but it was returned again. Childs was having some financial difficulty. With regard to subsequent events, the record contains the following testimony: "Q. And now, now . . . also you're holding two security deeds on two houses to cover these same automobiles, aren't you? A. I hold two security deeds to cover the whole indebtedness. Q. All right, and pursuant to that, you . . . he paid you five hundred dollars cash, didn't he? A. No, sir, he came down and signed a note and we took the deeds and he was going to send it right back and

it was several days. . . Q. Well, isn't it true that he has paid approximately five hundred to eight hundred dollars cash from him on this indebtedness? A. I'd have to look at the note, Mr. Calhoun, but I got one five hundred dollar check and two or three one hundred checks. Q. And as long as you were collecting this money, you had no desire to proceed with this prosecution, did you? A. As long as I was collecting the money? Q. Yes, sir. A. No, sir, not to that extent. I would have went along and worked out something with Bobby on the whole business, but we set. the note up, it came due in something like three months. and he was going to pay a big sum, and pay the rest of it off. Q. But, it is a fact, Mr. Riner, that you have accepted this security deed and accepted approximately eight hundred dollars from him and you did not proceed with this prosecution . . . A. Right, right. Q. *And if he had continued making these payments, we would not be in court today, would we?* A. *That's a fact."* (Emphasis supplied.)

It appears from this evidence that Riner and Childs resolved the matter between themselves. They treated the check as a debt along with some other indebtedness, not here material, and Riner had taken a promissory note secured by security deeds to certain of defendant's property and did not press this worthless check prosecution until after the defendant became delinquent in payments on the promissory note.

3. There was a crime committed in this case according to the statute and according to the facts in the record. And it is urged by the appellee that nothing can be effected between the parties after a crime to alter the fact of crime; that restitution has no bearing on guilt or innocence; and that no action taken by a party to recoup his loss would preclude him from proceeding with a criminal prosecution. These assertions are correct as general propositions of criminal law. The reason is that the State has expressly forbidden certain conduct and prescribed a penalty therefor and when the law is not observed the State is the party offended and may prosecute the offender.

But there is an exception to this rule and we are of the view that this case comes well within the exception. Simply stated, some "crimes" can be so resolved between the parties that a criminal prosecution may not follow. As with many areas of the law, there is no clear line of demarcation between the two

areas. In *Holsey v. State*, 4 Ga. App. 453 (61 SE 836), it was definitely established that Holsey drove the horse of another without the consent of the owner which was, and still is, a misdemeanor. The owner gave Holsey the choice of taking a whipping or paying for the horse. Holsey chose the latter and bought the horse on satisfactory terms. Thereafter a prosecution was instituted by an accusation of misdemeanor and Holsey was convicted. In reversing the conviction, this court, at page 454, stated: "Indeed, we think it may be said, as a general rule, that in no event will a prosecution under [*Code* § 26-3401] . . . lie, where, before the institution of the prosecution, the owner of the animal, either for or without a consideration, has given acquiescence, or, so to speak, ex post facto consent to the previously unauthorized use of his property. This ruling is to be taken, however, with the understanding that the principle *is applicable only in that class of cases where the offense involves no crime against society or good morals, but relates solely to the redressing of private-property wrongs.* Of course the ex post facto consent of the owner could not render a larceny, with all its elements complete, any less a crime; but as to the offenses of the nature involved [here] . . . there is a different principle." (Emphasis supplied.)

It is to be noted that the *Holsey* case involved a misdemeanor; that it proceeded by accusation rather than by indictment; that it involved a crime which the court felt could be classified more as a private wrong than as a wrong against society or good morals; and that the settlement was effected before the prosecution was pressed.

The Act of 1850 provided that it would be lawful "in all criminal offenses against the person or property of a citizen, not punishable by fine *and* imprisonment, or by a more severe penalty, for the offender to settle the case with the prosecutor, *upon the consent of the injured party being obtained,* at any time before verdict." (Emphasis supplied.)

In *Dunn v. State*, 15 Ga. 419, the question arose as to whether the crime of trading slaves fell within the classification of crimes which could be privately settled, and it was decided that it could not because of the community's interest in suppressing the evil. Justice Lumpkin, discussing the Act, stated:

"Now, I suppose that the Legislature intended, by this Act, to permit all criminal cases of a minor nature, and more im-

mediately, if not exclusively, affecting the person and property of the individual injured, to be adjusted, provided the party aggrieved was satisfied—such as assaults and batteries, the unjustifiable whipping of slaves, &c." P. 420.

He then stated that although the various kinds of malicious mischief were not expressly included in the Code among crimes which could be privately settled, he was of the opinion that a proper construction of the Act encompassed such crimes, and continued: "And then, again, on the other hand, I apprehend, that there are crimes against the person or property—and which would not be excluded from the operation of the Act of 1850, on account of the nature of their punishment—which, nevertheless, are excluded, because, while they affect the individual, are, at the same time, peculiarly prejudicial to the public police. And for that reason, they cannot be settled privately. . . In one class of cases, the public wrong is merged in that of the individual, and compensation to him, is accepted as the adequate measure of redress. In the other, the individual grievance is swallowed up in the greater wrong done to society; and nothing but public punishment will suffice, to vindicate the violated law."

We cite the *Dunn* case of 1854 only for the purpose of showing that settlement of certain classes of crimes is not novel.

We do not find that the Act of 1850 (Ga. L. 1850, p. 274) has ever been repealed. We note that this Act makes a distinction in cases which arise from "bill found by a grand jury" and provides that in such event the crime may not be settled except with consent of both the prosecutor and the court.

The Act of 1870 (Ga. L. 1870, p. 422; *Code* § 27-1701) makes the same distinction and requires court approval of settlements only in cases which have proceeded by *indictment or special presentment*. The case of *Goolsby v. Bush*, 53 Ga. 353 (1874), making reference to the Act of 1870, held that the contract which was there involved was not illegal because it involved the settlement or compromise of an offense against the Penal Code. The court noted that the punishment for the particular offense was not fine *and* imprisonment *and* had not proceeded by an indictment or presentment. It was observed that, in such a case, court approval was not necessary for the settlement.

All of the cases which have been called to our attention were

cases which proceeded by indictment and therefore could not, in any event, be settled without court approval. See, e.g., *Williams v. State,* 105 Ga. 606 (31 SE 546); *Lowe v. State,* 111 Ga. 650 (36 SE 856); *Sanders v. McKee,* 145 Ga. 507 (89 SE 484). Some of these cases involved crimes of a nature not within the exception discussed in the first part of this division. See, e.g., *McGinty v. State,* 97 Ga. 368 (1) (23 SE 831); *Coleman v. State,* 43 Ga. App. 586 (159 SE 605).

4. The evidence in this case shows that the check involved was made on November 17, 1966. The testimony indicates that the parties, shortly afterward, settled the matter between themselves by the secured promissory note. The affidavit and accusation upon which the prosecution proceeded are dated February 17, 1968. Appellee states that there was an earlier affidavit and accusation which were deemed by the solicitor to be defective in form and that he chose to nol. pros. it. There is some testimony in the record that the matter was dismissed at Riner's request. That accusation would speak for itself but it is not in the record. Suffice it to say that the settlement was effective between the parties at one point in time prior to this prosecution. The prosecution was pressed after the settlement had been effected. This is what happened in the *Holsey* case, supra, and reversal was required. The conviction here is, likewise, contrary to the law and the evidence and the request for a new trial should have been granted. The trial court erred in not doing so.

*Judgment reversed. Felton, C. J., and Eberhardt, J., concur.*

ARGUED JULY 1, 1968—DECIDED OCTOBER 9, 1968—
REHEARING DENIED NOVEMBER 25, 1968.

*Calhoun & Kernaghan, William C. Calhoun,* for appellant.
*Randolph C. Karrh, Solicitor, Roundtree & Roundtree, W. E. Roundtree,* for appellee.