EL PUEBLO DE PUERTO RICO, recurrido, *v.* ANGEL RAMÍREZ VALENTÍN, acusado y peticionario.

*Número:* O-79-92    *Resuelto:* 29 de junio de 1979

*Hermes Acevedo Lebrón,* abogado del recurrente; *Héctor A. Colón Cruz, Procurador General,* y *Rose Mary Corchado Lorent, Procuradora General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR MARTÍN emitió la opinión del Tribunal.

El derecho penal, así como la filosofía que lo anima, no ha

sido estático en el tiempo. El estudio de la función represiva a través de la historia muestra que el derecho penal ha revestido diversos fundamentos en los distintos tiempos. Los historiadores de esta ciencia suelen afirmar que pueden señalarse cuatro períodos en su transformación: la venganza privada, la venganza divina, la venganza pública y el período humanitario. E. Cuello Calón, *Derecho Penal*, México, D. F., 1961, Tomo I, pág. 54. Ahora bien, según fluyen en el tiempo los conceptos del derecho penal y surgen y desarróllanse nuevas ideas en la materia, se perfilan instituciones que guardan características de varias etapas de la evolución. Advertimos así a menudo cómo los caracteres de algunas figuras trascienden de la época de su gestación y se proyectan al futuro localizándose en alguna disposición del ordenamiento.

Nada seguro se sabe acerca del principio que inspiraba la penalidad en los tiempos más remotos; la justicia represiva de éstos apenas se deja entrever a través de las narraciones mitológicas de los antiguos poemas. Afirman los penalistas, sin embargo, que en los primeros grupos humanos, cuando el poder público no poseía aún el vigor necesario para imponerse a los particulares, la función penal revestía el aspecto de una venganza. La venganza dio origen a graves males—a sangrientas guerras privadas que produjeron el exterminio de numerosas familias. Alimena, *Principii di diritto penale*, Nápoles, 1910, Vol. 2, pág. 97, citado por Cuello Calón, *op. cit.*, pág. 55.

Como los vengadores al ejercitar su derecho no reconocían limitación alguna y causaban al ofensor o a su familia todo el mal posible, para evitar las perniciosas consecuencias de una reacción ilimitada, atenuóse ésta por medio del talión, según el cual no podía devolverse al delincuente un mal mayor que el inferido por él a su víctima. Su fórmula fue "ojo por ojo, diente por diente." Con el transcurso del tiempo apareció otra limitación de la venganza, *la composición,* mediante la cual el ofensor y su familia rescataban del ofendido y de los suyos,

mediante el pago de una cantidad, el derecho de venganza.[1] Ver R. von Ihering, *El Espíritu del Derecho Romano*, (abreviatura), Buenos Aires, 1947, págs. 65 *et. seq.*

No obstante, cuando la historia marca la intervención definitiva del Estado en la actividad penal, para representar ya no solamente el interés particular del perjudicado si que también el interés social de armonía que el delito enerva, el principio de la composición pierde fuerza y efectividad, toda vez que la efectiva compensación de los daños al ofendido por el agresor, no priva al estado, como sabemos, de sus potencialidades punitivas.[2] Mas no ha sido absoluta la desaparición del principio de compensación del panorama jurídico penal. R. Maurach, *Tratado de Derecho Penal* (Deutsches Strafrecht), Barcelona, 1962, Vol. 1, págs. 46–47. Sostienen muchos estudiosos que hay ciertos delincuentes ocasionales que cometen pequeños delitos bajo circunstancias que denotan ausencia de peligrosidad en el actor, siendo en estos casos suficiente exigírseles reparación de los daños causados para que se extinga su responsabilidad. H. Silving, *Criminal Justice*, Buffalo, N.Y., 1971, Vol. I, pág. 120; citando a E. Ferri, *Criminal Sociology*, traducción al inglés de Kelly y Lisle, 1917, pág. 553. Son esos casos en los que por la naturaleza eminentemente privada del daño, el interés sancionador se satisface con la exclusiva compensación del mal causado.

En esta última posición se entronca nuestra Regla 246 de Procedimiento Criminal, que dispone:

---

[1] No se confunda este concepto con la llamada "teoría del resarcimiento" que legitima la imposición de la pena sosteniendo que el culpable, merced a la expiación de la pena, debe resarcir los daños morales o ideales (mal ejemplo, desprecio a las leyes, etc.) que ha ocasionado con su acto punible. L. Jiménez de Asúa, *Tratado de Derecho Penal*, 2da ed., Buenos Aires, 1950, Tomo II, pág. 45.

[2] La diferencia entre la pena y la reparación de los daños del delito apenas existió en el antiguo derecho; en el germánico especialmente, en muchos casos no era posible distinguir claramente qué se paga en concepto de pena y qué en concepto de reparación del daño. Por el contrario, el derecho moderno ha diferenciado claramente las consecuencias penales del delito (penas y medidas de seguridad) de sus consecuencias civiles (reparaciones e indemnizaciones).

"Solo podrán transigirse aquellos delitos menos graves (*misdemeanors*) en los que la persona perjudicada pudiere ejercer acción civil por los daños sufridos, pero aun tales delitos no podrán transigirse si se cometieren tumultuosamente, o con la intención de cometer un delito grave (*felony*) o por o contra un funcionario judicial o funcionario del orden público en el ejercicio de sus funciones.

En aquellos casos en que esta regla permite la transacción, si la parte perjudicada compareciere ante el tribunal donde está pendiente la causa en cualquier momento antes de la celebración del juicio y reconociere plenamente que ha recibido reparación por el daño causádole, el tribunal podrá, en el ejercicio de su discreción, decretar el archivo y sobreseimiento definitivo del caso, previo pago de las costas. El tribunal expondrá los fundamentos del sobreseimiento y archivo, los cuales se harán constar en las minutas. El sobreseimiento y archivo así decretado impedirá la formulación de otro proceso contra el acusado por el mismo delito."

Atendiendo a estos principios veamos los hechos que dieron lugar a la controversia planteada en el recurso de autos.

El peticionario, Angel Ramírez Valentín, fue acusado del delito de homicidio involuntario por, según se reseña en el pliego acusatorio, causar la muerte de Providencia Grajales Vélez al manejar un vehículo de motor en estado de embriaguez, con negligencia y descuido. Demandado que fuera en daños y perjuicios por los herederos de la Sra. Grajales, transigió la acción por la suma líquida de $16,000. A base de dicha transacción e invocando la citada Regla 246 acudió ante la Sala de Aguadilla del Tribunal Superior donde se ventilaba el caso de homicidio, solicitando que se archivara la causa previo pago de las costas. En resolución dictada en 12 de febrero de 1979, el Tribunal Superior se negó a acceder a la solicitud del peticionario, acudiendo éste ante nos en solicitud de *certiorari*. Dimos plazo al Procurador General para que expusiera su parecer respecto a la contención del peticionario y habiendo comparecido aquél, ha quedado la controversia debidamente argumentada y lista para solución. Veamos.

Es preciso consignar, en primer lugar, que la

Regla 246 de Procedimiento Criminal no reconoce efectos definitivos a la transacción entre la parte perjudicada y el acusado de delito menos grave, para propósitos del archivo de la acusación penal. La regla confiere discreción al juez, que es quien conoce las circunstancias que han distinguido la acción delictiva de que se trata. Ese requisito, no es cosa baladí y denota en cambio, sabio criterio. El juzgador puede advertir circunstancias concurrentes con el delito que reflejen elementos de perversidad, temeridad o conducta tan crasamente antisocial en el acto delictivo que deban ser corregidos a través de la operación del mecanismo penal. Y además, como señala Quintano Ripollés, las intervenciones judiciales tienen en estos casos el importante cometido de "prevenir transacciones inmorales . . . que a menudo revisten el carácter de verdaderos 'chantages'." A. Quintano Ripollés, *Comentarios al Código Penal*, Madrid, 1966, págs. 313 y 443.(3)

⬛ Sin embargo, no es preciso resolver en este caso si el juez de instancia ejerció correctamente su discreción, pues lo fundamental es recordar cuanto hemos sostenido desde *Pueblo* v. *Collazo*, 51 D.P.R. 451, 456 (1937), a los efectos de que no todo delito menos grave es susceptible de ser transigido por razón de la previa compensación a la víctima. Ver *Pueblo* v. *Tribl. de Distrito y Colón, Int.*, 74 D.P.R. 838, 852-853 (1953). Aclaramos desde entonces que en los delitos donde no sólo se lesionan particulares intereses privados, sino que por el contrario se afectan fundamentales postulados sociales y comunitarios el procedimiento criminal es insoslayable. Correctamente determinó el tribunal sentenciador que el homicidio involuntario es uno de esos delitos donde el agravio a la sociedad, que se ve privada de uno de sus miembros,

---

(3)La transacción judicialmente aprobada es circunstancia que sobreviene la comisión del delito y anula o extingue la acción penal. En España no existe esta causa de extinción de responsabilidad. Sí se tutela como tal el perdón del ofendido en aquellos delitos solamente perseguibles mediante denuncia o querella del agraviado. Ver Cuello Calón, *Derecho Penal*, 9na. ed., México, D.F., 1961, Tomo 1, pág. 626 *et seq.*

posterga cualquier interés meramente privativo de la familia del interfecto.(4) La preservación de la vida humana, sana y sosegada, es quizás el objetivo mismo de la colectividad.(5) Cuando la negligencia, descuido, o temeridad redundan en el insensato final de una vida, grave daño se causa a la sociedad que no se enjuga con el resarcimiento pecuniario de los causahabientes del que ha muerto.(6)

Más aún, tratándose como se trata de la protección de la vida misma de los ciudadanos, no podemos inducir a que aquél que cuenta con recursos económicos suficientes para resarcir la más exigente reclamación pecuniaria, pueda dar rienda suelta a su desidia, inmune por su poder económico al completo rigor de la Ley.(7)

*Se expide el auto solicitado y a tenor con la Regla 50 de este Tribunal se dictará sentencia confirmando la resolución recurrida y devolviendo el caso al Tribunal Superior, Sala de Aguadilla, para la continuación de los procedimientos. Se hará constar que nada de lo aquí expuesto debe tenerse como adjudicativo de los méritos de la acusación que se procesa contra el aquí peticionario.*

Los Jueces Asociados Señores Rigau, Dávila y Díaz Cruz concurren con el resultado.

---

(4)Es evidente también, que en delitos de la envergadura del homicidio probablemente resulten agraviados o perjudicados moral o materialmente innumerables sujetos que no necesariamente serán los familiares de la víctima. Ver J. Sáez Jiménez, *Enjuiciamiento Criminal*, Madrid, 1962, págs. 96–97.

(5)Sobre los problemas criminales que a la sociedad moderna le plantea el automovilismo, consúltense L. Jiménez de Asúa, *Tratado de Derecho Penal*, Buenos Aires, 1956, Tomo V. pág. 966 *et seq.*, y *Pueblo* v. *Matos Pretto*, 93 D.P.R. 113 (1966).

(6)Similarmente se ha interpretado en California la Sec. 1377 de su Código Penal de donde procede nuestra Regla 246. *People* v. *O'Rear*, 34 Cal. Reptr. 61, 64 (1963). Ver *Childs* v. *State*, 165 S.E.2d 577, 579–580 (1968); *State* v. *Garoutte*, 388 P.2d 809, 812 (1964); Ariz. Rev. Stat. Ann. § 13–1591 (Supp. 1973), según enmendado, Ch. 58 § 11, [1969] Ariz. Laws 131. Ver además *Compounding Crimes: Time For Enforcement?* 27 Hastings L.J. 191–192 (1975).

(7)Véase H. Reed Searle, *An Argument For the Public Defender System*, 5 Santa Clara Law, 48, 54 (1964).