EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Manuel R. Suarez Jiménez y otros <br><br> Peticionarios <br><br> v. <br><br> Comisión Estatal de Elecciones y otros <br><br> Recurridos | Certificación <br><br> 2004 TSPR 185 <br><br> 163 DPR ＿＿＿ |

Número del Caso: CT-2004-4

Fecha: 30 de noviembre de 2004
(Opinión Disidente emitida por el Juez Asociado señor Rebollo López)

Tribunal de Primera Instancia
Sala Superior de San Juan


Abogada de la Parte Peticionaria:

Lcda. María Soledad Piñeiro


Abogados de la Parte Recurrida:

Lcdo. Pedro Delgado
Lcdo. Luis F. Estrella Martínez
Lcdo. Gerardo de Jesús Annoni
Lcdo. Juan Dalmau
Lcdo. Thomas Rivera Schatz
Lcdo. Pedro E. Ortiz Álvarez
Lcda. Gina R. Méndez Miró
Lcda. Johanna M. Emmanuelli Huertas
Lcdo. José A. Carlo Rodríguez
Lcdo. José E. Meléndez Ortiz, Jr.
Lcdo. Alberto Rodríguez Ramos


Materia: Solicitud de Certificación de Recurso ante el Tribunal de Primera Instancia, Sala de San Juan


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Manuel R. Suárez Jiménez
y otros

     Peticionarios

       vs.                   CT-2004-004    CERTIFICACIÓN

Comisión Estatal de Elecciones
y otros

     Recurridos

OPINIÓN DISIDENTE EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ

San Juan, Puerto Rico, a 30 de noviembre de 2004

Este Tribunal, no hay duda, es el interprete máximo de la Constitución y de las Leyes del Estado Libre Asociado de Puerto Rico. Ello <u>no</u> significa, sin embargo, que tengamos el poder y la facultad para actuar en forma arbitraria y a destiempo. La razón resulta ser sorprendentemente sencilla: esa misma Constitución --la cual, repetimos, nos designa como el interprete máximo de sus disposiciones-- <u>lo prohíbe</u>.

<u>Disentimos</u> de la Opinión emitida por una mayoría de los integrantes del Tribunal <u>por dos razones</u>. En <u>primer</u> lugar, el recurso presentado ante nuestra consideración <u>no</u> presenta un "caso o controversia" sobre el cual este Tribunal deba

expresarse. Al así hacerlo, la Mayoría incurre en la emisión --prohibida por nuestra Constitución-- de una "opinión consultiva".

En _segundo_ lugar, disentimos por cuanto en el presente caso --al radicarse una solicitud de remoción ("_notice of removal_") ante la Corte de Distrito Federal para el Distrito de Puerto Rico con relación al caso ante nuestra consideración y al haber sido notificados de ello-- este Tribunal no podía continuar adelante con los procedimientos hasta que la Corte de Distrito Federal pase juicio sobre la procedencia de dicha solicitud de remoción; ello en vista de la clara disposición a esos efectos de 28 U.S.C.A. sec. 1446(d).[1]

Acorde con lo anteriormente expresado, pospusimos la certificación de la presente Opinión disidente, reservándonos el derecho a publicarla posteriormente, conforme así lo establece la Regla 5 de nuestro Reglamento. En el día de hoy y obligados por las disposiciones de la citada disposición reglamentaria --la cual nos concede únicamente el término de diez días para publicar la ponencia, contado el mismo a partir de la fecha de reserva--

---

[1] Este Inciso dispone lo siguiente:

> "Promptly after the filing of such notice of removal of a civil action the defendant or defendants shall give written notice thereof to all adverse parties and shall file a copy of the notice with the clerk of such State court, which shall effect the removal and the State court shall proceed no further unless and until the case is remanded." (Énfasis suplido.)

procedemos a certificar la presente Opinión disidente. Veamos.

I

El 2 de noviembre de 2004 se celebraron elecciones generales en Puerto Rico. Tras el conteo inicial, la Comisión Estatal de Elecciones --a tenor con lo dispuesto en el Artículo 6.007 de la Ley Electoral de Puerto Rico, Ley Núm. 4 de 20 de diciembre de 1977, según enmendada, 16 L.P.R.A. sec. 3267-- informó que de acuerdo a los resultados preliminares el candidato a gobernador que más votos había acumulado hasta ese momento era el Lcdo. Aníbal Acevedo Vilá.

El 9 de noviembre de 2004 comenzó el escrutinio general de todas las papeletas a tenor con lo dispuesto en el Artículo 6.008 de la Ley Electoral, 16 L.P.R.A. sec. 3268. Durante este proceso, el Partido Nuevo Progresista --por conducto del Lcdo. Thomas Rivera Schatz, Comisionado Electoral del mencionado Partido-- objetó la validez de ciertas papeletas estatales en las que los electores hicieron tres marcas, una bajo la insignia del Partido Independentista Puertorriqueño, otra en el encasillado provisto para el candidato a gobernador por el Partido Popular Democrático y otra en el encasillado correspondiente al candidato a comisionado residente del Partido Popular Democrático. En específico, argumentó que estas papeletas

eran nulas ya que no había forma de determinar la verdadera intención del elector.

Mediante resolución a esos efectos, el 12 de noviembre de 2004 el Lcdo. Aurelio Gracia Morales, Presidente de la Comisión Estatal de Elecciones, <u>resolvió que las papeletas en controversia eran válidas y que serían adjudicadas como votos mixtos</u>. Al fundamentar su decisión, Gracia Morales citó el Inciso 33 del Artículo 1.003 de la Ley Electoral, 16 L.P.R.A. sec. 3003,[2] y la Regla 78 del Reglamento para las Elecciones Generales y el Escrutinio General de 2004,[3] aprobado el 2 de julio de 2004.

Por otro lado, el 8 de noviembre de 2004, el Presidente de la Comisión Estatal de Elecciones emitió otra resolución donde reiteró su determinación a los efectos de que procedía realizar un escrutinio general previo al recuento de votos dispuesto en el Artículo 6.011 de la Ley Electoral, 16 L.P.R.A. sec. 3271. <u>Ninguna de estas resoluciones fueron</u>

---

[2] El referido Inciso dispone:
> *Papeleta mixta.*–Significará aquella en que el elector vota marcando en la papeleta electoral, individualmente o en combinación con una marca bajo la insignia de un partido, cualquier combinación de candidatos, sean o no del mismo partido o independientes, o mediante la inclusión de nombres no encasillados en la papeleta.

[3] El Inciso 2 de esta Regla dispone:

> Papeleta Mixta– Aquélla en la que el (la) elector(a) vota marcando en la papeleta electoral, individualmente o en combinación con una marca por la insignia de un partido político, cualquier combinación de candidatos, sean o no del mismo partido político o independientes, o mediante ka inclusión de nombres no encasillados en la papeleta.

revisadas dentro del término legal establecido, por lo que las mismas advinieron finales y firmes luego de los diez días siguientes a su notificación.

Así las cosas, el 16 de noviembre de 2004 los aquí peticionarios presentaron ante el Tribunal de Primera Instancia, Sala Superior de San Juan, una demanda sobre sentencia declaratoria en la cual alegaron que el 12 de noviembre de 2004 los co-demandados Pedro Rosselló González y Thomas Rivera Schatz, mediante una acción instada ante el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico, habían solicitado, entre otras cosas, que se declararan nulas las papeletas estatales en las que aparecieran las referidas tres marcas.[4] Argumentaron que con dicha acción los co-demandados "pretend[ían] que la CEE anul[ara] el voto de los demandantes, y de todos aquellos que como ellos votaron."[5] Asimismo, adujeron que "[t]al privación constituiría un daño irreparable a los demandantes pues sus votos no serían contados, lo que equivale a impedirles que ejerzan su derecho constitucional al derecho al voto."

_____

[4] En esta demanda se solicitó, además, que dicho tribunal federal le ordenara a la Comisión Estatal de Elecciones que procediera a realizar el recuento de votos dispuesto en el Artículo 6.011 de la Ley Electoral de forma simultánea con el escrutinio general.

[5] Véase página 3 de la Demanda presentada ante el Tribunal de Primera Instancia, Sala Superior de San Juan, en el caso Manuel R. ("Manny") Suárez Jiménez, et al. v. Comisión Estatal de Elecciones, et al., Núm. KPE 04-3568.

En vista de lo anterior, los peticionarios --aun cuando admitieron que estos votos habían sido declarados válidos por la Comisión Estatal de Elecciones y estaban siendo contados y adjudicados como votos mixtos-- solicitaron del foro de instancia que emitiera una sentencia declarando la validez de estas papeletas. Asimismo, solicitaron que el referido foro emitiera un interdicto permanente ordenándole a la Comisión Estatal de Elecciones que contara dichos votos.

El Tribunal de Primera Instancia desestimó la demanda presentada al concluir que el pleito no era justiciable.[6] Al fundamentar su determinación, el referido foro llamó la atención hacia el hecho de que el 12 de noviembre de 2004 el Presidente de la Comisión Estatal de Elecciones había emitido una resolución en la cual determinó que las papeletas en controversia debían ser adjudicadas y contabilizadas como "papeletas de voto mixto"; esto es, el Tribunal de Primera Instancia entendió que el pleito presentado por los demandantes era académico, pues ya la Comisión había tomado una decisión la cual era favorable a los demandados.

Inconformes con dicha determinación, los demandantes acudieron ante este Tribunal mediante un recurso de

---

[6] El Tribunal de Primera Instancia adelantó su decisión en corte abierta y el 18 de noviembre de 2004 dictó la sentencia por escrito.

certificación, alegando que el Tribunal de Primera Instancia incidió al:

> ... desestimar el caso de epígrafe aduciendo que el mismo no era justiciable;

> ... no conceder remedios provisionales para garantizar los votos de los electores que votaron el las elecciones del 2 de noviembre del 2004.

El 19 de noviembre de 2004, el Tribunal le concedió a las partes recurridas hasta el medio día del 20 de noviembre de 2004 para que expusieran su posición. En esa ocasión el Juez suscribiente hizo constar que "proveería no ha lugar a la Solicitud de Certificación por entender que no hay caso o controversia, razón por la cual, cualquier expresión que tenga a bien hacer el Honorable Tribunal Supremo es solo una opinión consultiva."

El 20 de noviembre de 2004 una mayoría de los integrantes de este Tribunal, amparándose en la alegada importancia de certificar el presente caso y no "abdicar nuestra obligación constitucional" decidió asumir jurisdicción y emitió una <u>Sentencia revocatoria</u> de la decisión emitida por el Tribunal de Primera Instancia. Al así actuar, <u>la Mayoría ignoró por completo el hecho de que en el presente caso no existía una controversia justiciable</u>, pues el asunto aquí planteado quedó resuelto, <u>de manera final y firme</u>, mediante el dictamen emitido por el Presidente de la Comisión Estatal de Elecciones, en su resolución de 12 de noviembre de 2004.

La Mayoría —sin brindar explicación razonable alguna— ignoró la realidad fáctica de que, en virtud de la

resolución de la Comisión Estatal de Elecciones, los votos que intentaban "proteger" los peticionarios no sólo se estaban contabilizando como votos válidos, sino que, además, se estaban adjudicando como "votos mixtos" a favor del Partido Independentista Puertorriqueño y los candidatos del Partido Popular Democrático.

En esa ocasión, hicimos constar en la Sentencia que se emitió que el Juez suscribiente "a pesar de tener preparada y lista para ser certificada una Opinión disidente, no interviene y no publica su ponencia, en esta etapa de los procedimientos, en vista de que en el presente caso se ha radicado una solicitud de remoción  ("Notice of removal") por una de las partes ante la Corte de Distrito Federal para el Distrito de Puerto Rico, solicitud de remoción que por mandato expreso de un estatuto federal aplicable a Puerto Rico, a saber: 28 U.S.C.A. 1446(d), ordena la paralización automática de los procedimientos judiciales a nivel local o estatal y priva de jurisdicción al foro local. La actuación de la Mayoría resulta inútil, inoficiosa y no vinculante. El Juez Asociado señor Rebollo López se reserva el derecho a publicar su Opinión una vez la solicitud de remoción sea resuelta en forma definitiva."

II

En reiteradas ocasiones este Tribunal ha expresado que los tribunales de justicia existen para resolver controversias genuinas surgidas entre partes opuestas que

tengan un _interés real_ en obtener un remedio que haya de afectar sus relaciones jurídicas. _El Vocero_ v. _Junta de Planificación_, 121 D.P.R. 115, 123 (1988), _Comisión de Asuntos de la Mujer_ v. _Secretario de Justicia_, 109 D.P.R. 15 (1980); _E.L.A._ v. _Aguayo_, 80 D.P.R. 552 (1958). Hemos resuelto que un asunto _no_ es justiciable: (i) cuando se trata de resolver una cuestión política; (ii) en aquellos casos en que una de las partes no tiene [legitimación activa] para promover el pleito; (iii) cuando después de comenzado el pleito, _hechos posteriores lo convierten en académico_; (iv) _siempre que las partes buscan obtener una_ "opinión consultiva"; o cuando _se promueve un pleito que no está maduro_. Véase: _Sánchez_ v. _Secretario de Justicia_, res. el 28 de junio de 2002, 2002 T.S.P.R. 98; _Noriega_ v. _Hernández Colón_, 135 D.P.R. 406, 422-21 (1994).

A esos efectos, en _Comisión_ v. _Secretario_, ante, expresamos:

> El concepto justiciabilidad tiene su génesis en la jurisdicción norteamericana como derivado del Art. III de dicha Constitución. _Requiere la existencia de un caso y controversia real para el ejercicio válido del poder judicial federal_. Es el término artístico empleado para expresar una _doble limitación_ impuesta sobre los tribunales, a saber: (1) que sólo pueden decidir 'cuestiones presentadas _en un contexto adversativo_ y en una forma históricamente visualizada como capaz de ser resueltas a través del proceso judicial' y (2) la restricción que surge del papel asignado a la judicatura en una distribución tripartita de poderes, diseñada para asegurar que no intervendrá en áreas sometidas al criterio de otras ramas del gobierno. _Flast_ v. _Cohen_, 392 U.S. 83 (1968). La doctrina es autoimpuesta. En virtud de ella _los_ propios tribunales se preguntan y evalúan si es o no apropiado entender en determinado caso tomando en cuenta _diversos factores y circunstancias_

mediante un análisis que les permite ejercer su discreción en cuanto al límite de su poder constitucional. *Ibíd*., a la pág. 720.(énfasis suplido).

Estas doctrinas de autolimitación están fundamentadas en consideraciones derivadas de la prudencia y en las limitaciones constitucionales que prohíben al foro judicial emitir opiniones consultivas. Véase: Rexach v. Ramírez Vélez, res. el 15 de junio de 2004, 2004 T.S.P.R. 97. Hemos sido enfáticos al expresar que no es función de los tribunales --ni éstos pueden-- actuar como asesores o consejeros, por lo que las opiniones consultivas le están vedadas a los tribunales en nuestra jurisdicción. Véase: Comisión de la Mujer v. Secretario, ante, a la pág. 721; E.L.A. v. Aguayo, a las págs. 558-560.

Uno de los factores que debe tomarse en consideración, a los fines de determinar la justiciabilidad de un caso, es si el mismo se ha tornado o no académico. El concepto de academicidad recoge la situación en que, aun cumplidos todos los demás requisitos de justiciabilidad, los cambios fácticos o judiciales acaecidos durante el trámite judicial de una controversia tornan en académica o ficticia su solución. Los fundamentos en que se apoya dicha doctrina son: (i) evitar el uso innecesario de los recursos judiciales; (ii) asegurar la existencia de suficiente contienda adversativa sobre las controversia para que sean competentes y vigorosamente presentadas a ambas partes; y (iii) evitar un precedente innecesario. *Ibíd*. Véase, además, San Antonio Maritime v. Puerto Rican Cement, res. el 16 de

febrero de 2001, 2001 T.S.P.R. 16; Empresas Puertorriqueñas v. H.I.E.T.E.L., 150 D.P.R. 924, 936 (2000); Misión Industrial de Puerto Rico v. Junta de Planificación, 146 D.P.R. 64, 81 (1998); P.P.D. v. Gobernador I, 139 D.P.R. 643, 675-78 (1995); Noriega Rodríguez v. Jarabo, 136 D.P.R. 497, 507-08 (1994); Noriega v. Hernández Colón, 135 D.P.R. 406, 437-439 (1994); C.E.E. v. Depto. de Estado, 134 D.P.R. 927, 935-36 (1993); Asoc. de Periodistas v. González, 127 D.P.R. 704, 717 y ss. (1991).

Existen, naturalmente, una serie de excepciones a la aplicación de la doctrina de academicidad. Éstas son: (i) cuando se presenta una cuestión recurrente o repetitiva del asunto planteado; (ii) en aquellos casos en que la propia demandante termina voluntariamente su conducta ilegal; y (iii) cuando la situación de hechos ha sido cambiada voluntariamente por el demandado, pero que no tiene visos de permanencia. De igual manera se plantea una excepción en los casos en que el tribunal certifica una "clase" de conformidad con la Regla 20 de Procedimiento Civil de 1979, 32 L.P.R.A. Ap. III, y la controversia se torna académica para un miembro de la clase pero no para el representante de la misma; y en los casos que aparentan ser académicos pero en realidad no lo son por sus consecuencias colaterales. *Ibíd*.

A tono con lo anterior, hemos sido enfáticos al expresar que si luego de la debida investigación se comprueba que no existe una controversia genuina --por no

estar presente ninguna de las excepciones antes mencionadas--, los tribunales tienen el deber de desestimar el recurso presentado sin considerar el mérito de sus planteamientos. Véase: El Vocero v. Junta, ante, a las págs. 124-125; E.L.A. v. Aguayo, ante, a la pág. 562.

III

En su escrito ante nos la parte peticionaria solicitó de este Tribunal que resolviera, mediante sentencia declaratoria, "que los votos de los demandantes son votos mixtos válidos, los cuales le serán adjudicados a la insignia del PIP y a los candidatos a la gobernación y a comisionado residente del PPD". Ello no obstante, los peticionarios admiten en este mismo escrito que la Comisión Estatal de Elecciones ya resolvió esta controversia a su favor, ordenando que las papeletas estatales impugnadas fueran contabilizadas por tratarse de votos mixtos válidos y adjudicables. Asimismo, admiten que el dictamen de la Comisión Estatal de Elecciones advino final y firme por no haber sido solicitada su revisión dentro del término legal dispuesto para ello.

Como vemos, el dictamen final y firme de la Comisión Estatal de Elecciones coincide perfectamente con la contención de los peticionarios, incluso en cuanto a la

forma en que estos votos debían ser adjudicados.[7] Es por ello que no identificamos razón alguna por la cual este Tribunal debía expedir el recurso solicitado otorgándole a los peticionarios un remedio que ya les había sido concedido como parte de una controversia ya adjudicada. Es evidente que bajo estas circunstancias la actuación de la Mayoría no podía tener efectos prácticos ulteriores. Esto es, precisamente, lo que se persigue con la doctrina de academicidad, a saber: evitar el uso innecesario de los recursos judiciales, asegurar la existencia de suficiente contienda adversativa sobre las controversias y evitar precedentes innecesarios.

Ya hemos señalado que el dictamen de la Comisión Estatal de Elecciones advino final y firme y que las papeletas aquí en controversia se estaban contabilizando tal y como exigían ante nos los peticionarios. Como vemos, al emitir su Opinión la mayoría de este Tribunal alegadamente amparados "en la importancia del asunto y el interés público de que este Tribunal intervenga directamente en la adjudicación de un asunto de derecho", se abrogó un poder que no tenía, asumiendo jurisdicción en un caso en el cual no existía controversia real alguna.[8] De este modo, la

---

[7] Esto es, que dichos votos deben ser adjudicados tanto a favor del Partido Independentista Puertorriqueño como a favor de los candidatos del Partido Popular Democrático.

[8] No debemos pasar por alto el hecho de que para emitir una sentencia declaratoria es necesario que exista "una controversia sustancial entre partes que tienen intereses legales adversos".

Mayoría, no sólo emitió una opinión consultiva respecto a la validez de las papeletas de marras, sino que, además, se empeñó en discutir el asunto del recuento electoral, procediendo a conceder unos remedios para lo cual no tenía jurisdicción.

Cuando no existe una controversia viva o genuina, este Tribunal tiene el deber de desestimar el recurso planteado sin entrar a considerar los méritos de sus planteamientos. Actuar de otro modo --como lo hizo la Mayoría-- constituye un patente acto de imprudencia judicial y, a todas luces, constituye la emisión de una mera opinión consultiva. El hecho de que el asunto planteado esté revestido un gran interés público que incluya una cuestión constitucional --sin más-- no es suficiente para concederle jurisdicción a este Tribunal si no existe controversia real que resolver.

El deseo de expresarse sobre un asunto novel para proteger el "sufragio" no puede de forma alguna ser suficiente para abrir las puertas de este Tribunal para emitir dictámenes que no pasan de ser meras consultas legales. La controversia que alegadamente "resolvió" este Tribunal al emitir su opinión había sido ya atendida, y resuelta, por la Comisión Estatal de Elecciones y advino final y firme mucho antes de que este Tribunal se empeñara en asumir jurisdicción en este caso.

Finalmente, nos parece importante resaltar el hecho de que con su actuación la Mayoría le restó autoridad a las instituciones locales --en particular a la Comisión Estatal

de Elecciones-- cuando no reconoció el carácter final y firme de las resoluciones emitidas por la Comisión. <u>Ante esta actuación mayoritaria, cabe preguntarnos si la misma en algo ayudó a contrarrestar el alegado estado de incertidumbre al que tanto alude la Mayoría o si, por el contrario, tuvo el efecto de aumentar el mismo</u>. No cabe duda que el mejor y más correcto curso de acción en este caso hubiese sido reconocer y reiterar el poder del Presidente de la Comisión para resolver este tipo de asunto <u>y darle completa validez a su decisión final y firme que éste había emitido</u>.

IV

No podemos terminar sin discutir, aun cuando brevemente, la improcedente y hasta sorprendente acción de la Mayoría al certificar la Opinión mayoritaria <u>no obstante</u> haber sido formalmente notificado el Tribunal de la radicación de una solicitud de remoción ante la Corte de Distrito Federal para el Distrito de Puerto Rico.

La jurisprudencia federal, intrepretativa de 28 U.S.C.A. sec. 1446(d), claramente establece que una vez se presenta la petición de remoción ante la Corte de Distrito Federal, se notifica de dicha radicación a todas las partes adversas y se presenta una copia de la petición ante el tribunal estatal, <u>éste último no podrá continuar adelante</u>

con los procedimientos[9]; que el hecho de que todos los demandados no sean parte en la petición, no invalida la misma ya que ello no es un requisito o defecto jurisdiccional[10]; que la determinación sobre la validez, o no, de la petición será de la exclusiva incumbencia del foro federal[11]; y, por último, que cualquier sentencia, o actuación, del tribunal estatal, con posterioridad a la petición de remoción, será nula *ab initio*.[12]

Somos los primeros en aceptar que que no resulta "simpática" la situación de que un estatuto federal, en las circunstancias particulares del presente caso, nos prive de nuestra responsabilidad constitucional de interpretar nuestras leyes y nuestra Constitución y de nuestra función rectora de salvaguardar los derechos de quienes acuden ante nosotros amparados en nuestra Constitución.

---

[9] In re Diet Drugs, 282 F.3d 220 (3er Cir. 2002); Yarnevic v. Brink's, Inc., 102 F. ed 753 (4to Cir. 1996); Sweeney v.Resolution Trust Corporation, 16 F. 3d 1 (1er Cir. 1994); Hyde Park Partners, L.P. v. Connolly, 839 F. 2d 837 (1er Cir. 1988); Murray v. Ford Motor Co., 770 F. 2d 461 (5to Cir. 1985). Wright & Miller, Federal Practice & Procedure § 3737 (3ra· Ed. 1998).

[10] In re Bethesda Memorial Hospital, Inc., 123 F. 3d 1407 (11mo Cir. 1997); Balazik v. County of Dauphin, 44 F. 3d 209 (3er Cir. 19995); Matter of Amoco Petroleum Activities Co., 964 F. 2d 706 (7mo Cir. 1992); Johnson v. Hemerich & Payn, Inc., 892 F. 2d 422 (5to Cir. 1990); Johnson v. Odeco Oil & Gas Co., 864 F. 2d 40 (5to Cir. 1989). Wright & Miller, ante, § 3721.

[11] National S.S. Co. v. Tugman, 106 U.S. 118 (1881).
[12] Resolution Trust Corp. v. Bayside Developers, C.A., 43 F. 3d 1230 (9no Cir. 1994); Ward v. Resolution Trust Corp., 972 F. 2d 196 (8vo Cir. 1992); Hyde Park Partners, L.P. v. Connolly, ante; South Carolina v. Moore, 447 F. 2d 1067 (4to Cir. 1971).

Nuestros deseos y creencias personales, sin embargo, <u>no son suficientes para concederle jurisdicción a este Tribunal cuando no la tiene</u>. Vivimos bajo un <u>sistema federalista</u> de gobierno, sistema en el cual los estatutos federales prevalecen sobre los locales; <u>ello sucede no solo en Puerto Rico sino que también en los cincuenta Estados de la Unión Americana</u>.

V

En resumen, la actuación de la Mayoría en el presente caso ha resultado ser sorprendente, errónea y lamentable. <u>La misma, desafortunadamente, afecta la credibilidad y prestigio de este Tribunal</u>. Es por ello que no alcanzamos a comprender el porqué de esta apresurada e improcedente actuación.


FRANCISCO REBOLLO LÓPEZ
Juez Asociado